**A. F. McKNIGHT, Petitioner,**

v.

**VIRGINIA MIRROR COMPANY, Inc., Respondent.**

**No. B–2424.**

Supreme Court of Texas.

Feb. 10, 1971.

Esir Tobolowsky and E. D. Hurt, Dallas, for petitioner.

Schroeder, Guest & Hoffmeyer, Arthur G. Schroeder, Jr., Dallas, for respondent.

DANIEL, Justice.

Virginia Mirror Company brought this suit against Earl Moore, d/b/a Texas Glass and Mirror Company, upon a sworn account of $4,767.99 for mirrors delivered to Moore in Dallas, and against A. F. McKnight upon a letter of guaranty. Moore defaulted and judgment was rendered against him, from which no appeal was perfected. McKnight denied liability on his letter of guaranty, alleging that the terms of the sales contract between Virginia Mirror and Moore varied from the terms and conditions of his guaranty of payment by Moore. The issues between Virginia Mirror and McKnight were tried to a jury, which found (1) that Virginia Mirror did not fail to use ordinary care and diligence to collect from Moore and (2) that it did not agree that Moore could have additional time to pay. The trial court disregarded the jury findings and entered judgment non obstante veredicto in favor of McKnight. The Court of Civil Appeals found that there was evidence of probative value to support the jury findings and reversed and rendered in favor of Virginia Mirror. Virginia Mirror Co. v. Moore, 458 S.W.2d 938.

We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court. The parties will be referred to as in the trial court or by name.

McKnight's letter of guaranty, dated July 19, 1966, was addressed "To Whom it May Concern" and guaranteed payment for a total of five cases of mirrors to be delivered to Moore for use on a Dallas apartment project, but it contained the following conditions:

> "Each week a check is to be made on volume used and the following Friday, that part used is to be paid for. The total volume will be not more than $5,000.00."

These conditions, providing for a weekly inspection of the volume of mirrors used and payment on the following Friday for the volume used during the preceding week, were interpreted by both parties throughout the trial as a limitation on the liability and responsibility of McKnight under his guaranty. Such interpretation also was conceded to be correct by counsel for plaintiff in oral argument before this Court. Thus, it is undisputed that McKnight guaranteed payment of the Moore account only if the sale to Moore provided for a weekly check on volume used and payment each Friday for the mirrors found to have been used during the preceding week.

Plaintiff's Dallas representative, Mr. R. L. Hunt, mailed the letter of guaranty to his home office in Martinsville, Virginia, where it was accepted. However, there is no evidence that the terms and conditions of the guaranty were incorporated in the subsequent sales agreement between plaintiff and Moore. Instead, it is undisputed that on all subsequent deliveries to Moore, the home office billed him on its customary open account invoices, which provided for payment within thirty days, with a 1% discount if paid within ten days. The only sales contract between plaintiff and Moore was evidenced by these invoices, copies of which were attached and made a part of the plaintiff's petition filed herein on sworn account. There is no allegation or evidence that plaintiff required or made a weekly inventory of mirrors used or required payment for such number each Friday. On the contrary, plaintiff's bookkeeper and its Dallas representative, Mr. Hunt, both testified that the Moore accounts were payable monthly, and the bookkeeper testified that a weekly check on the volume of mirrors used by Earl Moore

was "no responsibility of Virginia Mirror Company."

◼ Hence, there was no identity between the terms of the McKnight guaranty and the terms of the sales contract between plaintiff and Moore. Only two deliveries of mirrors were involved. The first was made and billed on August 5, 1966, and the second on September 20, 1966, which was after the statement on the first delivery was delinquent. McKnight learned of the variance and Moore's failure to pay by letter from plaintiff dated April 6, 1967. In denying liability, McKnight contended that plaintiff's loss could have been avoided if it had required weekly inventories and payments as provided in his letter of guaranty. Whether or not this would have resulted, this variance from the conditions of the guaranty relieved McKnight of liability as a matter of law.

It is well settled in Texas that a guarantor may rely and insist upon the terms and conditions of his guarantyship being strictly followed, and if the creditor and principal debtor vary in any material degree the terms of their contract, then a new contract has been formed, upon which the guarantor is not obligated or bound. Jarecki Mfg. Co. v. Hinds, 295 S.W. 274 (Eastland, 1927, Tex.Civ.App., writ dis., Tex.Com.App., 6 S.W.2d 343); Ryan v. Morton, 65 Tex. 258. In Jarecki, supra, the late Chief Justice Hickman, while a member of the Eastland Court of Civil Appeals, stated the rule as follows:

"When one person assumes to answer for the debt, default, or miscarriage of another, whether such assumption constitutes him a surety or a guarantor within the technical meaning of the two terms, his liability upon such undertaking can be fixed and preserved only by a strict compliance with the terms of the guaranty. It has been often said that he is a favorite of the law.

His obligation does not extend one jot or tittle beyond what is 'nominated in the bond.' Smith v. Montgomery, 3 Tex. 199."

◼ After the terms of a guaranty agreement have been ascertained, the rule of strictissimi juris applies, meaning that the guarantor is entitled to have his agreement strictly construed and that it may not be extended by construction or implication beyond the precise terms of his contract. Southwest Savings Association v. Dunagan, et al., 392 S.W.2d 761 (Dallas, Tex.Civ.App., 1965, writ ref. n. r. e.). Hughes v. Straus-Frank Co., 127 S.W.2d 582 (San Antonio, Tex.Civ.App., 1939, affirmed, 138 Tex. 50, 156 S.W.2d 519, 1941). For a general statement of the rule and additional Texas cases, see 38 C.J.S. Guaranty § 38d, at pp. 1181–1183, and note 19 at page 1182. Cf. United Concrete Pipe Corporation v. Spin-Line Company, 430 S.W.2d 360, 366 (Tex.Sup.Ct., 1968), in which it was held that a surety was not discharged by reason of the payee's change in a related collateral agreement which "as a matter of law can only be beneficial to the surety."

The jury finding on ordinary care and diligence used by plaintiff to collect from Moore was irrelevant to the controlling issue in this case, and there is no evidence in the record to support the jury finding that plaintiff did not give Moore additional time beyond Friday of each week to pay for the volume of mirrors used during the preceding week. Plaintiff had no contract or agreement with Moore requiring payment at any time less than thirty days after delivery of the merchandise. Therefore, the trial court properly disregarded the jury findings and rendered judgment for McKnight.

For the reasons stated, the judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.