**Ben W. GREIG, Jr., Appellant,**

**v.**

**The FIRST NATIONAL BANK OF SAN ANGELO, Texas, Appellee.**

No. 7565.

Court of Civil Appeals of Texas, Beaumont.

June 6, 1974.

Powers & Rose, Austin, Upton, Shannon, Porter & Johnson, San Angelo, for appellant.

Smith, Davis, Rose, Finley, Hofmann, San Angelo, Davis & Nobles, Austin, for appellee.

STEPHENSON, Justice.

This is a suit by The First National Bank of San Angelo, Texas (Bank) against defendant, Capitol Contracting Company upon three promissory notes. Ben W. Greig, Jr., and two others were joined as defendants by reason of written contracts of guaranty. Trial was by jury and judgment was rendered for the Bank against all defendants upon the jury verdict. Only Greig has appealed.

Greig's first point of error is that the Bank's action against him is barred by the four year statute of limitation. The evidence shows the Capitol Contracting Company was incorporated in the State of Texas in 1964. Arrangements were made with the Bank to borrow up to $50,000 with Greig and the two others to guarantee the loan. November 29, 1965, Greig executed the instrument sued on which is designated as "Continuing Guaranty." A portion of that instrument reads as follows:

IN CONSIDERATION of credit and financial accommodations extended, to be extended or continued to CAPITOL CONTRACTING COMPANY hereinafter called "Borrower", by THE FIRST NATIONAL BANK OF SAN ANGELO, San Angelo, Texas, hereinafter called "Bank", and for other good and valuable consideration, I, we, and each of us, have jointly, severally and unconditionally guaranteed and do hereby jointly, severally and unconditionally guarantee to Bank, the payment of each and every claim, demand, indebtedness, right or cause of action of every nature whatsoever against said Borrower now or hereafter existing, due or to become due to, or held by bank to the extent of FIFTY THOUSAND AND NO/100—

Dollars, together with any and all expenses incurred by Bank in enforcing this Agreement. This is a continuing guaranty and all extensions of credit and financial accommodations concurrently herewith or hereafter made by Bank to Borrower shall be conclusively presumed to have been made in acceptance hereof."

In February, 1966, a note called a "master note" in the amount of $50,000 was executed by Capitol Contracting Company to the Bank. That note was secured by the continuing guarantees executed by Greig and the two other defendants. Capitol Contracting Company made its first draw against the master note, February 14, 1966, in the amount of $25,000. That amount was due March 27, 1966, but was not paid at that time. April 7, 1966, the interest was paid, and the note was renewed until May 11, 1966. Interest was paid May 31, 1966, and the note was again renewed. Then, on June 21, 1966, the note was increased to $45,945.38 and renewed to mature September 17, 1966. This practice of paying the interest and renewing the note by the execution of a new note after the maturity date continued about every ninety days, into 1971. Payments reducing the principal amount were made from time to time, and the last note executed was dated August 25, 1971, in the amount of $23,843.-20, due December 21, 1971. This latter note was the primary one sued upon and was the amount of indebtedness found by the jury and awarded by the court in its judgement.

■ This suit was filed December 29, 1971. Greig argues that the Bank had a cause of action against Capitol Contracting Company and the guarantors on their written contracts, as each note matured and was not paid or renewed on or before the maturity date. This point is overruled. In each instance, as Capitol Contracting Company executed a new note, there was a new obligation to the Bank, and Greig, under his guaranty agreement, guaranteed the payment of each new note. Greig admitted

that he never at any time gave written notice to the Bank revoking such continuing guaranty. The fact that each new note was not executed on or before the maturity of the preceding note is not controlling in this case.

Under the financial arrangement in this case, Greig did not obligate himself to guarantee the payment of a specific note, in which instance, whether or not there was a renewal and extension of the one note guaranteed would become material. Here under his written agreement Greig helped secure credit from the Bank in the amount of $50,000 by guaranteeing the payment of each and every obligation that Capitol Contracting Company owed at the time or existed thereafter. Even though the Bank may have had a cause of action against Capitol Contracting Company and Greig as each note matured, that cause of action was extinguished as a new note was executed and the old note thereby paid. The statute of limitation had not run on the cause of action sued upon when this suit was filed. See Texas Water Sup. Corp. v. Reconstruction Finance Corp., 204 F.2d 190 (5th Cir. 1953).

■ It is contended that it was error on the part of the trial court to refuse to submit to the jury issues relating to the defense of usury. This contention is based upon the theory that a requirement by the Bank that a compensating balance be maintained as a condition for a loan may render usurious any interest charged on the loan by the Bank. The evidence shows the American Savings Association purchased two certificates of deposit from the Bank, each in the amount of $50,000, paying five percent interest, during a part of the time these loans were being made to Capitol Contracting Company. The testimony was conflicting as to whether or not such purchases were conditions upon which these loans would be made. This point is overruled.

The evidence in this case does not raise a controlling issue which could be submit-

ted to the jury. Assuming the evidence would support a finding that the savings and loan association purchased certificates of deposit from the Bank as a condition so the Bank would make a loan to Capitol Contracting Company, this would not be a defense to this suit against Greig. There is no evidence that would support a finding that Capitol or Greig paid the bank usurious interest. If the facts in this case showed the Bank required Capitol or Greig to maintain a free compensating balance in the Bank in order to secure these loans, a different question would be presented, but we are not called upon to pass upon that question. All of the evidence shows the Bank charged no more than ten percent interest at any time upon any of the loans, which did not exceed the maximum permitted by law in effect at the time.

 We are well aware of the general rules applicable to usury and that in determining its existence all devices are disregarded. Whenever there is a charge contracted for, for the use of money, in excess of that allowed by law, it is usury even though it is covered under the guise of some other consideration. Maxwell v. Estate of Bankston, 433 S.W.2d 229 (Tex. Civ.App., Texarkana, 1968, no writ) (and cases therein cited). There is no evidence of such a contract here.

The charter of Capitol Contracting Company was forfeited by the Secretary of State on June 26, 1970, because of nonpayment of the franchise tax. As stated above, the primary note sued on here was executed August 25, 1971. Greig has a point of error that the trial court should have submitted his requested issue asking whether or not Tom Holstein, in executing and delivering this last promissory note, did so as an officer of Capitol Contracting Company. Greig's contention is that he is not obligated as a guarantor because the officers of this corporation could not execute a note for the corporation with its charter forfeited. This point is overruled.

First, we do not consider the requested issue to be an ultimate issue of fact, but rather to be one of law. However, meeting the question head on, we do not reach the result suggested by Greig. Greig incurred no additional liability as guarantor for Capitol Contracting Company when the note sued on was executed. He was already obligated when the prior notes were executed before the forfeiture of the charter. Also, we think the law is settled in Texas, that the validity of contracts made by corporations whose charters are forfeited because of non-payment of a franchise tax, are not affected thereby. The statutes providing for the tax and forfeiture are revenue measures only, and the only penalty imposed is to deny the corporation the right to prosecute and defend in the courts. Real Estate-Land Title & Trust Co. v. Dildy, 92 S.W.2d 318 (Tex. Civ.App., Austin, 1936, error ref.). See cases cited.

We have carefully considered the remaining points of error and finding them to be without merit, they are overruled.

Affirmed.