Robert B. HOLLAND, Jr., Appellant,

v.

**FIRST NATIONAL BANK IN DALLAS, Appellee.**

No. 19647.

Court of Civil Appeals of Texas, Dallas.

Feb. 12, 1980.

Rehearing Denied March 18, 1980.

James A. Ellis, Jr., Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, for appellant.

Bruce W. Claycombe, Coke & Coke, Dallas, for appellee.

Before GUITTARD, C. J., and AKIN and ROBERTSON, JJ.

GUITTARD, Chief Justice.

First National Bank in Dallas brought this suit against Robert B. Holland, Jr. on a "continuing" guaranty of the obligations of United Car Wash, Inc. The trial court instructed a verdict for the bank, and Holland

contends on this appeal that the claim is barred by limitation. The principal questions presented are whether the guaranty covers a renewal of the indebtedness by the principal obligor and the effect of such a renewal after the bank had accelerated maturity of the original note and made claim against the guarantor. We hold that the guaranty, by its terms, includes renewals by the principal obligor and that on maturity of the renewal note a new cause of action accrued which is not barred by limitation. We also hold that the trial court properly held as a matter of law that the guaranty and the renewal note were supported by consideration and that execution of the renewal note was properly proved. Finally, we hold that the trial judge did not abuse his discretion in refusing to delay the trial to permit the guarantor to amend his pleading alleging additional defenses.

### 1. Limitation

The limitation question turns on the provisions of the written contract of guaranty. The principal indebtedness was originally represented by a note for $449,727.98, dated July 24, 1970, executed by United Car Wash, Inc., in favor of the bank. The guaranty by Holland is dated the same day, but there is evidence that it was signed a few days later. It recites that the borrower, United Car Wash, "may from time to time become indebted" to the bank, acknowledges receipt by the guarantor of a valuable consideration, and provides that the guarantor "hereby guarantee[s] to Bank the prompt payment at maturity of the Guaranteed Indebtedness, as that term is herein defined." The definition referred to is found in paragraph 1, as follows:

1. Unless a different definition is stated in Paragraph 12 hereof, the expression "Guaranteed Indebtedness," as that term is used herein, means *all indebtedness of every kind and character, whether now existing or hereafter arising*, of Borrower to Bank . . .. [Emphasis added.]

No "different definition" is stated in paragraph 12. Paragraph 1 also limits the amount of the guaranteed indebtedness at any one time to $449,727.98.

Paragraph 2 likewise refers to paragraph 12, which, again, is inapplicable because it contains no limiting definition. Paragraph 2 provides:

2. Unless by the provisions of Paragraph 12 hereof, the Guaranteed Indebtedness is limited to specific indebtedness or borrowings, *this instrument shall be a continuing guaranty* . . .. [Emphasis added.]

Paragraph 2 further provides that payment of the indebtedness in full shall not affect the guarantor's liability with respect to indebtedness thereafter incurred, but authorizes the guarantor to terminate the guaranty with respect to any future indebtedness by giving notice to the bank.

On this appeal Holland argues that although the guaranty may be "continuing" in the sense that it covers other indebtedness by the borrower to the bank incurred after execution of the guaranty, it does not cover a renewal of the same indebtedness. Consequently, he insists, the bank's claim on the guaranty is barred because more than four years elapsed after the bank accelerated the maturity of the original indebtedness and before this suit was filed.

We do not agree. We hold that the contractual definition of "guaranteed indebtedness" above quoted includes renewals of the same indebtedness as well as additional borrowings. Such renewals clearly fall within the language "all indebtedness of every kind and character." The ensuing phrase "whether now existing or hereafter arising" is not a limitation, but rather an extension of the guaranty to indebtedness existing in the future. Admittedly, the definition does not mention renewals specifically, but no specific provision was necessary in view of the broad term, "all indebtedness, of every kind and character."

This interpretation is supported by other provisions of the contract that would be meaningless if renewals were not included. In paragraph 6 the guarantor waives notice "of the making, renewing or assignment of the Guaranteed Indebtedness." Waiver of notice of renewal would be meaningless if

renewals were not included in the indebtedness guaranteed. Paragraph 10 provides that in the event of the guarantor's death, the guaranty remains in effect as an obligation of his estate as to "the Guaranteed Indebtedness, as it exists at the date of death, and any renewals or extensions thereof." The apparent purpose of this provision is to make sure that coverage with respect to renewals does not cease at the guarantor's death, as held in *Brinker v. First Nat'l Bank*, 37 S.W.2d 136, 140 (Tex. Com.App.1931, judgmt. adopted). It would be illogical to include renewals after the guarantor's death if renewals during his lifetime were not covered.

Another reference to renewals is found in paragraph 12, as follows:

12. Unless specific indebtedness is described in the space below, the expression "Guaranteed Indebtedness," as used herein, shall have the meaning stated in Paragraph 1, but if the space below is filled in, such expression shall mean the indebtedness described below, together with all renewals or extensions of such indebtedness, or any part thereof:

A blank space follows. The evident function of this paragraph is to provide a convenient method of limiting the guaranty to specific indebtedness by describing in the blank space a particular obligation of the borrower. If such an indebtedness is specified, the broad definition of "guaranteed indebtedness" in paragraph 1 would then be excluded. In that event this provision of paragraph 12 would be necessary to cover renewals of the specified indebtedness. On the other hand, if, as in this case, no indebtedness is specified in paragraph 12, that paragraph is inoperative and the broad definition in paragraph 1 applies.

Thus, consideration of the document as a whole leaves no ambiguity with respect to the intent of the parties to include renewals as well as additional borrowings in the definition of "guaranteed indebtedness." In-

deed, the contrary interpretation would be illogical and unreasonable. Why should the parties include additional borrowings for an indefinite period, but exclude renewals of the original indebtedness? No explanation of such an arrangement appears in the record. We should not give the contract an interpretation leading to such an illogical result unless the language clearly requires it.

In support of his limitation plea, Holland points out that on November 24, 1971, the bank accelerated the maturity of the note and demanded payment under his guaranty, and that the renewal note was executed by United Car Wash on May 4, 1972, after this demand was made. The suit was not filed until February 5, 1976, more than four years after the demand was made. Holland argues that the bank's cause of action accrued when the demand was made and that the action of other parties could not cause that cause of action to "unaccrue" so as to interrupt the running of limitation.

 We cannot accept this reasoning. Either the renewal was included in the "guaranteed indebtedness," or it was not. If not included, then the renewal discharged the guarantor under well-settled rules. *Straus-Frank Co. v. Hughes*, 138 Tex. 50, 156 S.W.2d 519, 521 (1941). If the guarantor was discharged, the bank had no further cause of action against him. On the other hand, if the renewal is included in the terms of the guaranty, as we hold, then until the renewal note falls due, the bank has no enforceable claim against the guarantor on the guaranty because it covers only "the indebtedness . . . of Borrower to the Bank." Under this provision the bank has no cause of action against the guarantor apart from the indebtedness of the borrower, regardless of whether the guaranty waives joinder of the borrower in the suit.[1] As between the bank and the borrower, the renewal note created new

1. In this respect the present guaranty differs from that in *Universal Metals & Machinery, Inc. v. Bohart*, 539 S.W.2d 874 (Tex.1976), which concerned an unconditional guaranty of a particular note, which was held to be binding on the guarantor whether or not the borrower was liable on the note. We need not consider whether in a suit on such a guaranty limitation would be suspended by an extension of the note.

evidence of the existing indebtedness, and the consideration for the new promise was the bank's forbearance to sue during the extended time. *Maceo v. Doig*, 558 S.W.2d 117, 119 (Tex.Civ.App.—Austin 1977, writ ref'd n. r. e.). Limitation did not begin to run on the renewal note until the time for performance of the new promise. *McNeill v. Simpson*, 39 S.W.2d 835, 836 (Tex.Com. App.1931, judgmt. adopted). The bank's agreement with the borrower to forbear suit until maturity of the renewal note suspended its right of action against both the borrower and the guarantor since, by the terms of the guaranty, the bank has no cause of action against the guarantor apart from the indebtedness of the borrower. *Greig v. First Nat'l Bank*, 511 S.W.2d 86, 88 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.). Thus, the guarantor's defense must stand or fall with his contention that the guaranty does not cover the renewal note. Our holding that the renewal note is covered, therefore, compels the conclusion that the trial court was correct in overruling the plea of limitations.

This holding is not contrary to *Trimble v. Whitson*, 77 S.W.2d 899 (Tex.Civ.App.—Waco 1934, no writ), the principal authority cited by the guarantor. That case was not a suit on a written guaranty, but was a suit against the maker of a note which had been assumed by a subsequent purchaser of a tract of land formerly owned by the maker. The purchaser and the holder of the note agreed to an extension, and the suit was brought against the maker more than four years after maturity of the original note. The trial court sustained a plea of limitation, and the appellate court held, quite correctly, that the purchaser could not bind the maker by a contract to which he was not a party and, therefore, the cause of action against the maker was barred. That decision cannot control a case involving a written guaranty which authorizes and includes renewals without notice to the guarantor.

In *Trimble* the court added that the assumption of the note by the purchaser made him the principal and the maker the surety for the debt, so that the extension as be-

tween the purchaser and the holder had the effect of releasing the maker from personal liability. This ground for affirming the judgment is evidently stated as an alternative to the first because if the maker was released by the extension, as the court held, no cause of action remained on which limitation could run.

## 2. Consideration for Guaranty

■ Holland challenges the judgment on the ground that the bank failed to prove a consideration for the guaranty. As we have already pointed out, there is evidence that the guaranty was signed a few days later than the original note by United Car Wash, although both bear the same date. We hold that the bank had no burden to prove consideration. The written guaranty contract imports a consideration and its production casts the burden of showing lack of consideration on the guarantor. Tex. Rev.Civ.Stat.Ann. art. 27 (Vernon 1969); *see Maykus v. Texas Bank & Trust Co.*, 550 S.W.2d 396, 398 (Tex.Civ.App.—Dallas 1977, no writ). Therefore, lack of consideration is an affirmative defense that is required by Rule 93 of the Texas Rules of Civil Procedure to be pleaded under oath. Since there is no such pleading in this record, we hold that the defense of lack of consideration is not raised.

## 3. Consideration for Renewal Note

■ Holland also asserts that the instructed verdict was improper because the bank failed to prove consideration for the renewal note. He argues that the bank had the burden to prove some additional benefit or detriment at the time the indebtedness was renewed. This contention is contrary to well-settled rules. The borrower agreed to pay interest for an additional period, as provided in the renewal note, and the bank, by accepting the renewal, agreed not to sue on the indebtedness until the renewal note matured, whether or not the original note was cancelled and returned. This mutual agreement is in itself sufficient consideration for a renewal. *Benson v. Phipps*, 87

Tex. 578, 29 S.W. 1061 (1895); *McNeill v. Simpson*, 39 S.W.2d 835, 835–36 (Tex.Com. App.1931, judgmt. adopted); *Maceo v. Doig*, 558 S.W.2d 117, 119 (Tex.Civ.App.—Austin 1977, writ ref'd n. r. e.).

■ We cannot accept Holland's suggestion that although the renewal note may have been binding on United Car Wash, a new consideration was required to bring it within the guaranty. If the renewal note is binding on the borrower and covered by the terms of the guaranty, it is binding on the guarantor; if it is not covered by the guaranty, it is not binding on the guarantor. Since we hold that it is covered, no new consideration is required.

*4. Execution of Renewal Note*

■ Holland contends further that the bank failed to prove that the renewal note was executed by an authorized representative of United Car Wash. We hold that under section 3.307 of the Uniform Commercial Code, Tex.Bus. & Comm.Code Ann. § 3.307 (Tex.U.C.C.) (Vernon 1968), production of the note itself is sufficient to prove the signature and authority of the agent in the absence of a specific denial. *Loveless v. Texas First Mortgage REIT*, 531 S.W.2d 870, 873 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ dism'd).

Holland argues that the *Loveless* decision is wrong because Chapter 3 of the Uniform Commercial Code does not purport to govern suits on contracts other than commercial paper, and the guaranty in question is not an "instrument" within the Code. This argument is untenable for two reasons. First, this suit is based on the note as well as on the guaranty, since proof of both is necessary to recovery. Second, we find nothing in Chapter 3 limiting its application to a suit on an "instrument" as defined by the Code. We see no reason why section 3.307 should not apply whenever commercial paper on which the suit is based is offered in evidence, since the same basic reasoning applies, namely, that in ordinary experience forged or unauthorized signatures are very uncommon. *See* Tex.Bus. & Comm.Code Ann. § 3.307, comment (Tex.U.C.C.) (Vernon 1968).

Holland insists that this presumption of authenticity should not apply as against a guarantor, who may not have direct knowledge of the facts with respect to execution of a renewal note. Section 3.307, however, is not limited to suits against the person whose signature may be questioned. The evident purpose of this section is to give notice that evidence of the genuineness of the signature or the authority of the signer will be required. Under section 3.307, the person denying the signature, if not a party to the instrument, may put the authenticity of the signature in issue by a specific, though unsworn, denial. We see no reason why that requirement should not apply to this case. Since Holland failed to file a specific denial, the bank had no notice that such evidence would be required. Consequently, we hold that the bank had no burden to offer such evidence.

*5. Leave to Amend and Continuance*

■ Holland's last two points complain of the court's action in striking his "First Supplemental Original Answer" filed five days before trial, in denying leave to amend this pleading, and in overruling his motion for continuance. The record shows that the case was originally set for trial on August 6, 1976, and was reset on appellant's jury demand for February 21, 1977. The trial was postponed again to November 28, 1977. Holland filed his "First Supplemental Original Answer" on November 23, 1977. This pleading, though labeled "supplemental," attempts to raise several additional defenses to the bank's suit, and, therefore, is an amendment to the original answer subject to the provisions of Rule 63, Tex.R.Civ.P. *Box v. Associates Investment Co.*, 389 S.W.2d 687, 689 (Tex.Civ.App.—Dallas 1965, no writ). Apparently, it was not intended to supersede the original answer, and the judge did not so regard it.

On the day of trial, the bank filed exceptions to the "supplemental original answer" and moved to strike it on the ground that it was filed within seven days of the trial without leave of court and that Holland had

ample time to amend his answer within the time allowed by Rule 63, but had waited to file the amended answer until after plaintiff had announced ready. The bank also filed exceptions objecting to the generality of the allegations and challenging their sufficiency as defenses to the bank's claim. The judge signed a written order reciting that the court had sustained special exceptions to the "supplemental original answer," that defendant had requested leave to amend to meet those exceptions, but that such leave was denied "for the reason that such First Supplemental Answer was filed less than seven days before trial date and such leave to amend was requested upon the trial date." The judge also signed an order overruling defendant's motion for continuance. This order recites that such motion had been "filed so as to permit an amendment to Defendant's Answer, and the Defendant having failed to make sufficient showing of diligence in his efforts to amend such Answer."

The statement of facts shows the circumstances under which these rulings were made. Before the trial began, counsel for defendant moved the court for leave to amend his pleadings that had been stricken and requested that he be allowed a continuance for the purpose of amending his pleadings. As grounds for denying this request, the judge reviewed the proceedings for the record and stated his findings that the "supplemental original answer" was filed on a date prohibited by the rules and "does constitute and include elements of defense not theretofore included in the Original Answer and upon which Plaintiff would not have a fair opportunity to prepare and present his defenses at the current setting." With respect to the motion for continuance, the judge stated further that defendant had "failed to exhibit any good cause for failure to urge the additional defenses at an earlier date."

 On this appeal Holland argues that the judge erred in striking his "supplemental original answer" and in denying him leave to amend further in the absence of a showing of surprise by the bank because of the provision in Rule 63 that leave to amend "shall be granted unless there is a showing that the amendment will operate as a surprise to the opposite party." With respect to striking the pleading, we hold that no reversible error is shown because Holland does not complain that the court erred in sustaining the bank's exceptions. Although the judge's remarks as reported in the statement of facts leave doubt as to whether each exception was considered on its merits, we must presume that all the exceptions were sustained, as the court's order recites, and that they were properly sustained, since Holland does not assert the contrary. Striking a pleading to which exceptions have been sustained is not ground for reversal unless the pleader stands on his allegations and assigns the ruling on the exceptions as error on appeal. This record shows that Holland did not stand on the allegations of his "supplemental original answer," but requested leave to file an amendment to meet the exceptions that had been sustained and moved for a continuance in order that he might have time to prepare such an amendment. Consequently, the court's action in striking the "supplemental original answer" does not, in itself, present reversible error.

 Holland argues also that the judge had a mandatory duty under Rule 63 to permit him to amend further and abused his discretion in overruling his motion for a continuance. We hold that leave to amend is not mandatory, even in the absence of a showing of surprise, if the amendment is not tendered for filing and the party seeking to amend must move for a continuance to give him time to prepare it. A motion for continuance raises the question of diligence on the part of the moving party, as when the delay is sought because of the absence of a witness. *See Fritsch v. J. M. English Truck Line*, 151 Tex. 168, 246 S.W.2d 856, 858 (1952). A motion for continuance also invokes the general rule that delay of the trial is a matter within the judge's discretion. *Hernandez v. Heldenfels*, 374 S.W.2d 196, 202 (Tex.1963). Until the proposed amendment is tendered, the

objecting party should not be required to show surprise because he is not in a position to determine whether additional trial preparations would be required. Neither can the judge determine with certainty whether the matter to be alleged in the amended pleading would be material to the claim or defense.

■ Accordingly, in this case, when Holland requested leave to amend further and moved for a continuance to permit the amendment, the judge's consideration was not limited to whether the proposed amendment would come as a surprise to the bank. He could consider also whether Holland had been diligent in amending his pleading, and in that respect, could reasonably expect an explanation from Holland as to why the "supplemental original answer," to which exceptions had been sustained, had not been filed until five days before the trial. The judge might also have anticipated that if the trial were delayed to permit further amendment, further exceptions would have been filed and the court would then have to determine whether the new defenses pleaded, if supported by evidence, would defeat the bank's claim, and, if so, whether the bank had sufficient time to prepare to meet them. Under these circumstances, we conclude that the judge did not abuse his discretion in ruling that since Holland failed to make any explanation of why his "supplemental original answer" had not been filed until five days before the trial, no further delay should be allowed to permit an amendment to meet the exceptions that had been sustained.

Our former opinion is withdrawn, the motion for rehearing is overruled, and the judgment is affirmed.

AKIN, J., dissents.

AKIN, Justice, dissenting.

I cannot agree that the language of the guaranty includes a renewal note and that on maturity of the renewal note, a new cause of action arose on the same indebtedness under the guaranty. Instead, I would hold that the renewal of the note was not included within the ambit of the language defining guaranteed indebtedness. Assuming, however, that the guaranty is capable of two reasonable constructions, following familiar construction rules favoring the guarantor, I would adhere to the same holding. Consequently, the bank's action on the indebtedness is barred by limitations. Although Holland's pleading of discharge was stricken by the trial judge, the guarantor would have been discharged by the execution of the renewal note since it was not authorized by the guaranty. I would also hold that the trial judge abused his discretion in refusing to permit the guarantor to amend his pleadings alleging additional defenses, including discharge. Accordingly, I must dissent.

*Holland's Construction Not Unreasonable*

The majority concedes that its opinion stands or falls upon their construction of the guaranty. The majority holds that the guaranty encompasses a renewal of the original indebtedness. I cannot agree. The basic flaw in the majority's reasoning is a misapplication of two basic principles of contract and suretyship law. The first of these is that where a surety agreement is capable of two reasonable constructions, the construction more favorable to the guarantor should be adopted. *E. g. McKnight v. Virginia Mirror Company*, 463 S.W.2d 428, 430 (Tex.1971). The second is that an agreement capable of two reasonable constructions should be construed against the scrivener. *Leslie Lowry & Co. v. KTRM, Inc.*, 239 S.W.2d 898 (Tex.Civ.App.—Beaumont 1951, no writ).

The bank argues, and the majority agrees, that under the guaranty, Holland remains liable on the guaranty under a renewal of the original indebtedness between the debtor and the bank. The guaranty was on a printed form drafted by the bank, and we may safely assume that the bank did intend that Holland should remain liable on a renewal of the original indebtedness. But that intent is not controlling here. For the purposes of this part of my dissent I assume the reasonableness of the

majority's construction of the phrase "all indebtedness of every kind and character" in paragraph one, as including a renewal of the original indebtedness. But this proposition, like the bank's intent, is not dispositive of the case at bar. The controlling question is whether the construction of the guaranty advanced by Holland is reasonable. If it is, then the settled principles noted above require that the construction of the guaranty urged by defendant be adopted. By refusing to adopt Holland's construction, the majority holds that, as a matter of law, that construction is unreasonable.

Holland asserts that the guaranty does not include renewals. He argues that the first paragraph defining guaranteed indebtedness encompasses additional loans to the debtor but not a renewal of the original indebtedness because the language does not specifically so state. In my view, Holland's construction is reasonable. If the language of paragraph 1 is sufficiently broad enough to include renewals, as the majority maintains, why then did the scrivener for the bank deem it necessary to specifically refer to "renewals and extensions thereof" in the alternative definition of "guaranteed indebtedness" set forth in paragraph 12? Obviously, this specific language would have been unnecessary if the language used in paragraph 1 was meant to include renewals of the same indebtedness. Under the construction given this language by the majority, a debtor could execute a renewal note long after limitations had run and the guarantor would be liable.

The majority maintains that a construction of "guaranteed indebtedness" including additional loans but not renewals of the original loan is illogical and unreasonable. I cannot agree. There is a fundamental distinction between a renewal of the original indebtedness and an additional loan. With respect to an additional loan, the guarantor has a built-in safeguard. A bank ordinarily will make an additional loan only if it believes the creditor to be capable of repaying the additional amount. But with respect to a renewal, the guarantor has no such protection. Financial weakness on the part of the debtor may be the basis of a

renewal of the loan. If the debtor is on the verge of insolvency and is unable to repay the loan, the bank has an incentive to renew the loan and hope the debtor's position improves.

On the other hand, the guarantor may prefer that the debt not be renewed, but instead that the debtor's assets be liquidated and used, pro tanto, to pay the guaranteed indebtedness, rather than risk a further deterioration of the debtor's liquidity. Thus there exists an imminently logical distinction between a guaranty of additional loans and a guaranty of renewals of the original indebtedness.

The majority also reasons that the definition of guaranteed indebtedness in paragraph 1 must encompass renewals of the original indebtedness because paragraphs 6 and 10 mention the term "renewal." I do not agree that this can be the basis for holding the construction advanced by Holland to be unreasonable. The guaranty is on a printed form prepared by the bank. As previously noted, paragraph 12 of that form provides that the term "guaranteed indebtedness" may be limited to a specific amount together with renewals and extensions of that amount, if the specific amount is filled in below that paragraph. The space below paragraph 12 was blank, thus making that paragraph inoperative. Paragraphs 6 and 10 can be reasonably construed to include the term "renewal" only to cover situations where paragraph 12 is operative. Those paragraphs, as set forth below, would not be inoperative if the term "renewal" was struck from them. Paragraph 6 provides:

6. Notice to Guarantors of the acceptance of this guaranty and of the making, renewing or assignment of the Guaranteed Indebtedness and each item thereof, are hereby expressly waived by Guarantors.

With respect to this paragraph, I cannot agree that a waiver of notice of a renewal is the equivalent to a provision consenting to a renewal under the rule of *strictissimi juris* applicable to surety agreements.

*Southwest Savings Association v. Dunagan,* 392 S.W.2d 761, 766 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.). Paragraph 10 states:

10. In the event of the death of a Guarantor, the obligation of the estate of the deceased Guarantor shall continue in full force and effect as to (i) the Guaranteed Indebtedness, as it exists at the date of death, and any renewals or extensions thereof, and (ii) loans or advances made to or for the account of the Borrower after the date of the death of the deceased Guarantor pursuant to an obligation of the Bank under a commitment made to the Borrower prior to the date of such death, subject only to the limitation, if any be herein specified, on the amount of the Guaranteed Indebtedness. As to all surviving Guarantors, this guaranty shall continue in full force and effect after the death of a Guarantor, not only as to the Guaranteed Indebtedness existing at that time, but also as to indebtedness of the Borrower thereafter incurred by Borrower to Bank, subject only to the limitation, if any be herein specified, on the amount of the Guaranteed Indebtedness.

Neither can I agree that under these circumstances the mere mention of the term "renewal" in two paragraphs of the bank's printed form supports a holding that a construction of "guaranteed indebtedness" which does not include renewals is unreasonable.

Thus the majority's reasoning does not support their holding that Holland's construction of the guaranty is unreasonable. I would hold that paragraph 1 of the guaranty is susceptible to a reasonable construction that does not include renewals within the ambit of "guaranteed indebtedness."

*Limitations*

Apart from the question of whether a renewal is included within the language used to define "guaranteed indebtedness," I also disagree with the majority's conclusion that the statute of limitations does not bar the indebtedness sued upon because the bank could have sued Holland from the date of maturity and for four years thereafter. At the time of the acceleration on November 24, 1971, the bank had an independent right to sue Holland regardless of the subsequent renewal of the same indebtedness, without Holland's consent, between the bank and United Car Wash. Because Holland was an absolute guarantor, under the principles set forth in *Universal Metals & Machinery, Inc. v. Bohart,* 539 S.W.2d 874, 877 (Tex.1976), the bank's right to sue Holland was not dependent upon the later renewal of the note between the bank and the maker. The rule as stated by the supreme court in *San Antonio Real Estate Building & Loan Association v. Stewart,* 94 Tex. 441, 61 S.W. 386, 388 (1901), is: "[It] is not in the power of the creditor by his acts alone to change the rights of the parties resulting from the maturity of the debt." Consequently, the supreme court concluded that in a situation where the creditor had accepted later partial payments, the statute of limitations barred the action because these unilateral acceptances did not prevent the creditor from suing the guarantor after default. Thus, where the right to sue the guarantor continues, the statute of limitations continues to run.

Here, the bank contends, and the majority apparently agrees, that because it entered into a new agreement with United Car Wash, the debtor, the bank lost its right to sue Holland under the guaranty until United Car Wash defaulted on the second note. Essentially, the bank is contending that the new note covering the same indebtedness tolled the statute of limitations as to Holland. I cannot agree. This same contention was rejected, in a well reasoned opinion by Justice Alexander (later chief justice of the supreme court) in *Trimble v. Whitson,* 77 S.W. 2d 899 (Tex.Civ. App.—Waco 1934, no writ). In that case, the debtor and the creditor entered into an agreement extending and renewing the indebtedness, without the consent of the guarantor. That court held that since the guarantor was not a party to the new agreement between the debtor and the creditor, the guarantor was not bound by

the provisions of the new agreement. Justice Alexander further noted that insofar as the guarantor was concerned, the maturity date of the indebtedness remained as originally provided for in the note. Consequently, that court held that since suit was brought more than four years after the maturity date in the original note, it was barred by the four year statute of limitations.

The majority opinion attempts to distinguish *Trimble v. Whitson*, 77 S.W.2d 899 (Tex.Civ.App.—Waco 1934, no writ), on the ground that the guaranty here "authorizes and includes renewals without notice to or consent of the guarantor." As I read paragraph 6 of the guaranty, it waives notice of "the making, renewing, or assignment" of the guaranteed indebtedness but does not consent to any such actions. In so stating the majority is again construing the guaranty against the guarantor so as to extend his liability, which of course, is contrary to established rules of construction with respect to guaranty agreements.

In support of its contention that a new promise to pay an existing indebtedness will stop the running of the statute of limitations as to the guarantor and that the statute does not commence running again until the new time for performance of the renewal note arrives, the majority cites *McNeill v. Simpson*, 39 S.W.2d 835 (Tex.Com.App.1931, judgmt. adopted) and *Greig v. First National Bank*, 511 S.W.2d 86 (Tex.Civ.App.— Beaumont 1974, writ ref'd n. r. e.). Neither case supports this proposition. In *McNeill v. Simpson*, the creditor, debtor, and *the guarantor* orally agreed to an extension of time for payment of the note and that court held that a new contract, based upon new consideration, arose among the parties. That court did not hold that a guarantor, not a party to the new contract, would be bound by it, nor did it hold that the statute of limitations would be tolled in such a situation. Consequently, since Holland was not a party to the renewal and extension agreement, I do not regard *McNeill* as authority for the proposition asserted by the majority.

Neither does *Greig v. First National Bank, supra,* support the majority's position. In *Greig v. First National Bank*, at 88, that court was confronted with precisely this question:

> The fact that each new note was not executed on or before the maturity of the preceding note is not controlling in this case. . . . Even though the bank may have had a cause of action against Capital Contracting Co. and Greig as each note matured, that cause of action was extinguished as a new note was executed and the old note thereby paid. The statute of limitations had not run on the cause of action sued upon when this suit was filed. *See Texas Water Sup. Corp. v. Reconstruction Finance Corp.*, 204 F.2d 190 (5th Cir. 1953).

Although the *Greig* case implies that there was a *new debt*, this was not crucial to the point presented in that case and is not the law. A renewal (as in *Greig*) does not *extinguish* the *original indebtedness* unless the parties so agree, but operates only as an extension of the time to pay. "It remains the same; it is in substance and in fact the same indebtedness evidenced by a new promise." *Bank of Austin v. Barnett*, 549 S.W.2d 428, 430 (Tex.Civ.App.—Austin 1977, no writ). *See Schwab v. Schlumberger Well Surveying Corp.*, 145 Tex. 379, 198 S.W.2d 79, 82 (1946). The renewal note in our case cannot then be considered a "new debt" for which Holland would be unquestionably liable under the terms of the guaranty. Consequently, I do not regard *Greig* as authority to hold that the borrower is authorized to extinguish an accrued cause of action against the guarantor, absent consent from the guarantor.

The majority apparently holds that the bank's acceptance of the renewal note from United Car Wash on May 4, 1972, was an abandonment of its acceleration and, therefore, the statute of limitations did not begin to run until a default arose under the renewal note. Neither can I agree with this contention. Although a creditor may abandon, waive or rescind acceleration of the maturity of a note (none of which are

shown by the evidence here), it does not follow that if the creditor extinguishes the note accelerated by accepting a new note, the creditor may affect the rights of parties not privy to the new agreement, unless the guaranty upon which liability of the guarantor depends specifically authorizes such act. Instead, the rule is that a creditor, such as the bank here, cannot unilaterally change the rights of party, such as Holland, resulting from the maturity of a debt. *San Antonio Real Estate Building & Loan Association v. Stewart, supra* at 388.

Nevertheless, the bank argues, and the majority agrees, that the execution of the renewal note by United Car Wash stopped the running of limitations as to Holland. No authority holds that such a renewal would prevent the bank from suing Holland on his guaranty after the liability accrued thereon on November 24, 1971, and for four years thereafter. Indeed, paragraph 5 of the guaranty provides that "in the event of default by Borrower in payment of the Guaranteed Indebtedness, . . . when such indebtedness becomes due, either by its terms or as the result of the exercise of any power to accelerate, the Guarantors . . . shall on demand . . . pay the amount due thereon to the Bank . . and it shall not be necessary for the Bank, in order to enforce such payment by the Guarantors, first to institute suit or *exhaust its remedies against the Borrower or others liable on such indebtedness,* or to enforce its rights against any security which shall ever have been given to secure such indebtedness." As I read this language, Holland became unconditionally obligated to pay the indebtedness on November 24, 1971, regardless of whether the bank extended the time for the borrower to pay the indebtedness. Under the guaranty the bank had an absolute right to sue Holland, the guarantor, for an uninterrupted four year period after the accrual of this cause of action on November 24, 1971, even though as between the bank and the borrower no such right existed after renewal. Consequently, as to Holland's liability under his guaranty, he would have been precluded by paragraph 5 from asserting as a defense, during the four year peri-

od, any agreement made after accrual of payment of the indebtedness, such as the renewal note between the bank and United Car Wash.

Absent Holland's consent, the bank's renewal of the indebtedness is immaterial to the question of whether the four year statute of limitations had run on the guaranty or whether Holland was discharged as a matter of law. This is true because both discharge and limitations are affirmative defenses and, as here, Holland pleaded only limitations in the pleadings allowed by the trial judge. Although Holland also pleaded discharge in his disallowed amended pleading, the lack of pleadings with respect to discharge does not preclude him from asserting limitations, as the majority opinion suggests.

Neither can I agree with the majority's conclusion that "the renewal by the maker would be a defense to a suit against the guarantor before maturity of the renewal note because the guaranty covers only the 'indebtedness . . . of Borrower to Bank.'" The majority seems to reason that, absent the renewal note, the borrower is somehow not liable to the bank. I cannot accept this rationale because it confuses the underlying indebtedness with the notes, each of which merely evidence the underlying indebtedness. As noted earlier, there was but one indebtedness here with an original note representing that indebtedness and the renewal note on May 4, 1972, also representing the same indebtedness. *See Schwab v. Schlumberger Well Surveying Corp.,* 145 Tex. 379, 198 S.W.2d 79, 82 (1946). In my view, Holland was liable on the indebtedness due the bank from November 24, 1971, until that indebtedness was barred when Holland asserted his affirmative defense of limitations. The renewal note had no affect upon Holland's established liability and could not be a tolling of limitations as a matter of law.

### Denial of Leave to Amend

Neither can I agree that the trial judge was justified in striking Holland's pleading setting forth additional defenses filed five

days before trial. On the day of trial, the bank excepted to these pleadings on the ground that they were filed without leave of court and within seven days of trial. The bank neither pleaded nor presented evidence of surprise. Accordingly, the trial judge should not have stricken the pleadings because Tex.R.Civ.P. 63 states that leave to amend "shall be granted . . . unless there is a showing that . . . amendment will operate as a surprise to the opposite party." I would hold that under the clear language and spirit of rule 63, the trial judge abused his discretion in striking Holland's pleadings. *Hardin v. Hardin*, 584 S.W.2d 384, 385–86 (Tex.Civ.App.—Eastland 1979, writ granted). This abuse was compounded by the denial of Holland's motion for a continuance so that these material defenses could be presented. It should be noted that none of these defenses, such as discharge by novation, could in any way affect the bank's presentation of evidence but merely raised questions of law for the court. In such a situation, justice is served by permitting the pleading to be filed and if the opposing party shows surprise, then a continuance should be granted.

The majority seeks to justify its position by holding that Holland has failed to attack the trial court's action in sustaining special exceptions to the amended pleadings. Although the judge does recite that he sustains the exceptions, he does so on the ground that the pleading was filed within seven days of trial. Indeed, the trial judge's statement in the statement of facts resolves all doubt with respect to this question. In my view, the majority opinion places form over substance and places Holland in the same untenable position as did the trial judge when he struck Holland's amended pleading.

*Conclusion*

In conclusion, I would reverse and render the judgment of the trial court on the question of limitations. Alternatively, this court should hold that the trial judge abused his discretion in striking Holland's amended answer, denying him a continu-

ance, and then instructing a verdict against him. Accordingly, at least, the cause should be remanded so that justice may be done. This is particularly true here where the evidence in the bills of exceptions show conclusively that Holland was discharged as a matter of law.