889 F.2d 1477
 57 Ed. Law Rep. 363
 FEDERAL DEPOSIT INSURANCE CORPORATION In its Corporate
Capacity, Plaintiff-Appellee,
v.
Jimmie WOOLARD, Clyde Tanner, Ed Carnes, Layne Bearden, Greg
Akins, Lowell Fuller, and Winston Bell,
Defendants-Appellants.
 No. 88-7038.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 15, 1989.
 
 Andrew Harper Estes, Lowell Shane Stokes, Lynch, Chappell, Allday & Alsup, Midland, Tex., for defendants-appellants.
 Harold H. Pigg, Scott W. Sharp, Lubbock, Tex., Ira H. Parker, Ann S. DuRoss, Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Texas.
 Before GOLDBERG, POLITZ and JONES, Circuit Judges.
 EDITH H. JONES, Circuit Judge:
 
 
 1
 This is a suit on a written guaranty. The Federal Deposit Insurance Corporation ("FDIC") brought this action against the seven members of the Board of Trustees of Midland Christian School in their individual capacities, seeking to recover the balance owing upon a promissory note executed by the school. The district court found that the trustees had guaranteed the school's debt in a unique document titled "Addendum to Midland Christian School Guaranty" and held them jointly and severally liable for the balance due. Having determined that the trustees' limited guaranty was discharged by a subsequent renewal of the school's note, we reverse.
 
 BACKGROUND
 
 2
 The debt at issue in this case originated in 1981 when Midland Christian School borrowed funds from the First National Bank of Midland, Texas to institute a building expansion program. The school executed a promissory note and a deed of trust covering the school's property to evidence and secure the loan. This note was renewed several times by subsequent notes and extension agreements, and the amount of the school's indebtedness gradually increased. The note was extended for the last time on December 29, 1987, in the amount of $1,296,042.37.
 
 
 3
 An unusual extension of the school's note was executed on June 23, 1983. On that occasion, the school, acting through Jimmie Woolard and Winston R. Bell, two members of the Board of Trustees, executed two documents. The first was a promissory note (the "1983 Note") in the amount of $1,121,753.46 (the amount owed by the school at that time). The second was an "Extension of Real Estate Note and Lien" (the "1983 Extension"), which expressly extended the school's 1981 note. It is not clear why both documents were executed, since both evidence the same preexisting debt.[1] There are differences between the two documents. Most importantly, the 1983 Extension has language which renews and extends the term of the preceding note, while the 1983 Note has no such provision. In addition to the 1983 Note and Extension, the school, through Woolard and Bell, executed another deed of trust on its property.
 
 
 4
 Two months later all seven trustees executed an "Addendum to Midland Christian School Guaranty", which provides:
 
 
 5
 The undersigned hereby expressly guaranty only that one certain promissory note in the name of Midland Christian School in the original amount of $1,121,753.46 executed by Jimmie Woolard and Winston R. Bell and secured by that certain Deed of Trust of even date that created the lien against the following described property....
 
 
 6
 The Addendum is the focus of this lawsuit. It is a brief, poorly-drafted non-standard-form document.
 
 
 7
 On October 14, 1983, the United States Comptroller of the Currency declared the First National Bank of Midland insolvent. The FDIC was appointed receiver of the bank, and FDIC, in its corporate capacity, purchased the assets and claims of the bank, including Midland Christian School's note. In March, 1988 FDIC brought this lawsuit, claiming that the trustees had personally guaranteed the school's note in the Addendum.[2] After a non-jury trial the district court found for FDIC and held the trustees jointly and severally liable under the Addendum.
 
 
 8
 The trustees make several arguments on appeal. First, they argue that they should not be personally liable under the Addendum because they signed the document as representatives of the school. Second, they contend that their guaranty was discharged by the subsequent renewal of the school's note in 1987. Third, they claim that their liability should be extinguished because the Addendum was materially altered after its execution. Finally, they assert that the Addendum is insufficient to constitute a valid guaranty agreement under Texas law.
 
 
 9
 We need not consider whether the Addendum constitutes a formally valid or personal guaranty, because we hold that even if it is such a guaranty, the trustees' limited obligation was discharged by the subsequent renewal of the school's note in 1987.
 
 ANALYSIS
 
 10
 Under Texas law,[3] the guarantor of a note is discharged from his obligation to answer for that debt if the creditor grants an extension of time for the payment of the note to the principal debtor. United States v. Vahlco Corp., 800 F.2d 462, 465 (5th Cir.1986); Tomlin v. Ceres Corp., 507 F.2d 642, 646 (5th Cir.1975); Glasscock v. Console Drive Joint Venture, 675 S.W.2d 590, 591 (Tex.App.--San Antonio 1984, writ ref'd n.r.e.). There are two general exceptions to this rule. First, a guarantor will not be discharged if his guaranty is a "continuing guaranty" which encompasses future renewals or extensions. Holland v. First National Bank in Dallas, 597 S.W.2d 406, 409-10 (Tex.Civ.App.--Dallas 1980, writ dism'd); Dicker v. Lomas & Nettleton Financial Corp., 576 S.W.2d 672, 676 (Tex.Civ.App.--Texarkana 1978, writ ref'd n.r.e.). Second, a guarantor can expressly consent to future renewals or extensions and thereby waive any discharge defense. C. & G. Coin Meter Supply Corp. v. First National Bank in Conroe, 413 S.W.2d 151, 154 (Tex.Civ.App.--Eastland 1967, writ ref'd n.r.e.). Neither exception applies in this case.
 
 
 11
 FDIC does not argue that the Addendum is a continuing guaranty. A continuing guaranty is not confined to a particular transaction, but rather contemplates a future course of dealing. Blount v. Westinghouse Credit Corp., 432 S.W.2d 549, 553 (Tex.Civ.App.--Dallas 1968, no writ); 68 Tex.Jur.3d Suretyship and Guaranty Sec. 145 (1989). The language of the Addendum expressly limits the trustees' guaranty to "that one certain promissory note," so it cannot be a continuing obligation. Thus, the trustees' guaranty was discharged by the 1987 extension of the school's note unless the trustees consented to the extension.
 
 
 12
 The scant language of the Addendum itself contains no consent or waiver provision. However, the district court found that the trustees had waived their renewal defense by binding them to a provision in a 1981 note which reads:
 
 
 13
 All makers, endorsers, sureties and guarantors ... hereby waive ... any defense on account of the extension of time of payment ... and consent to any and all renewals and extensions....
 
 
 14
 The terms of the 1981 note, including the waiver provision, were expressly brought forward in the 1983 Extension. The district court found that the waiver applies to the trustees because the Addendum encompasses both the 1983 Extension and the 1983 Note.
 
 
 15
 The trustees concede that if the Addendum encompasses the 1983 Extension, they have waived their renewal defense. They contend, however, that the district court misconstrued the Addendum. The trustees argue that the waiver provision should not apply to them because the Addendum's reference to "that one certain promissory note" expressly limits its applicability to the 1983 Note, which contains neither waiver nor extension language.
 
 
 16
 The rules for interpreting guaranty agreements are well established. Western Bank--Downtown v. Carline, 757 S.W.2d 111, 114 (Tex.App.--Houston [1st Dist] 1988, writ denied). The general rule is that a guaranty agreement is to be strictly construed and may not be extended beyond its precise terms by construction or implication. Reece v. First State Bank of Denton, 566 S.W.2d 296, 297 (Tex.1978); McKnight v. Virginia Mirror Co., 463 S.W.2d 428, 430 (Tex.1971). A guarantor is a "favorite of the law", Southwest Savings Association v. Dunagan, 392 S.W.2d 761, 766 (Tex.Civ.App.--Dallas 1965, writ ref'd n.r.e.), and any uncertainty as to the meaning of his contract of guaranty should be resolved in his favor. Coker v. Coker, 650 S.W.2d 391, 394 (Tex.1983); Western Bank--Downtown, 757 S.W.2d at 114. The starting point for analyzing the rights and duties of the parties to a guaranty should be the language of the instrument itself. United States v. Outriggers, Inc., 549 F.2d 337, 339 (5th Cir.1977).
 
 
 17
 Since the Addendum is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous and we construe it as a matter of law. Coker v. Coker, 650 S.W.2d at 393. Applying the above rules, we find that the district court erred by construing the Addendum to encompass both the 1983 Extension and the 1983 Note. The language of the Addendum, strictly construed, leads to the conclusion that the guaranty encompasses only the 1983 Note. The Addendum limits the trustees' guaranty to "only that one certain promissory note" (emphasis added). The addendum, therefore, references only one document. Furthermore, that document is a "promissory note", not an "Extension of Real Estate Note and Lien".
 
 
 18
 FDIC attempts to avoid the impact of this distinction by arguing that the 1983 Extension, though not titled as such, is also a "promissory note". We need not pass on the merits of this contention; even if we assume that the 1983 Extension is a promissory note, the rest of the description of the note guaranteed in the Addendum excludes the 1983 Extension. The Addendum describes the note it guarantees as being "in the name of Midland Christian School in the original amount of $1,121,753.46 excecuted by Jimmie Woolard and Winston R. Bell and secured by that certain Deed of Trust of even date...." The only document in the record which meets every part of this description is the 1983 Note. Only the 1983 Note refers to the Deed of Trust executed that same day. In contrast, the 1983 Extension refers to a previous Deed of Trust which secured a 1981 note. In addition, the 1983 Note is in the original amount of $1,121,753.46, while the 1983 Extension is an extension of a 1981 note in the original amount of $1,000,000. Thus, the language of the Addendum indicates that it encompasses only the 1983 Note.
 
 
 19
 FDIC argues that despite its language the Addendum encompasses both the 1983 Note and the 1983 Extension because the Note and Extension should be construed together. Separate instruments contemporaneously executed as part of the same transaction and relating to the same subject matter may be construed together as a single instrument. Harris v. Rowe, 593 S.W.2d 303, 306 (Tex.1979). However, this rule cannot help FDIC. We are construing the Addendum in this case, not the 1983 Note or 1983 Extension. The above rule dictates that the Extension be used to help interpret the Note, see 14 Tex.Jur.3d Contracts Sec. 190 (1981), but it does not lead to a construction of the Addendum that encompasses both the Note and the Extension.
 
 
 20
 We conclude that the Addendum encompasses only the 1983 Note, which contains no waiver provision. Thus, the trustees did not waive their renewal defense, and their guaranty was discharged by the 1987 extension of the school's note. Accordingly, the decision of the district court holding the trustees liable as guarantors must be REVERSED.
 
 
 
 [1]
 The Extension is a preprinted form document with prophetic cautionary language at the top: "Notice: Prepared by the State Bar of Texas for use by lawyers only.... No 'standard form' can meet all requirements." The parties agree that the Bank was not represented by legal counsel in connection with these critical documents
 
 
 [2]
 FDIC also sued on a document titled "Guaranty", which was among the assets of the failed bank. The "Guaranty" provides that the named individuals agreed to be responsible for any and all indebtedness of Midland Christian School up to $1.2 million. The document appears to have been executed by the trustees. However, while the trustees admitted signing the Addendum, they denied executing the "Guaranty". The district court did not rule on the validity of the signatures found with the Guaranty, nor does it or FDIC premise the trustees' liability on that document alone. Presumably, this is because the Guaranty and Addendum were found in the banks' records affixed together. In any event, our analysis is limited to the issues as developed in the district court
 
 
 [3]
 Although FDIC brought this action in its corporate capacity, neither party has presented the issue whether federal, rather than state, law should govern this case. See FDIC v. P.L.M. International, Inc., 834 F.2d 248, 252 (1st Cir.1987); FDIC v. Wood, 758 F.2d 156, 159 (6th Cir.), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); FDIC v. Braemoor Associates, 686 F.2d 550, 553-54 (7th Cir.1982), cert. denied, 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 297 (1983). Therefore, without addressing that question, we apply Texas law. All the documents involved in this case were executed in Texas, and the parties' exclusive reliance on Texas law in presenting this appeal demonstrates their intent to regulate and interpret the agreements under the laws of that state. See FDIC v. Cardinal Oil Well Servicing Co., 837 F.2d 1369, 1370 & n. 1 (5th Cir.1988) (applying state law without comment where Federal law issue not raised)