### SAN ANTONIO REAL ESTATE BUILDING AND LOAN ASSOCIATION v. SOLON STEWART.

#### No. 984. Decided March 21, 1901.

**1. Limitation—Installment Notes—Default—Maturity.**

A contract providing that on default in payment of one or more of a series of installment notes the remaining .notes of the series shall be due and payable, operates to mature the entire debt and to set limitation running against it upon such partial default, and not merely to give the creditor an option whether to treat the whole debt as due or not. (Pp. 444, 445.)

**2. Same—Contract—Maturing on Default.**

Installment notes and the mortgage or lien securing them forming one contract, the effect of the insertion of a provision for maturing the entire debt on a partial default in payment is the same when inserted in the instrument securing the notes as though in the notes themselves; it matures the remaining notes for general purposes, not merely so far as to allow foreclosure, and sets limitation running from the time of default. (P. 445.)

**3. Installment Notes—Partial Default—Maturity of Whole—Contract.**

Whether the debtor in a contract maturing an entire series of installment notes upon a failure to pay any one, could, by his willful default, convert a promise for future payment with interest into one for present payment, and thus deprive the creditor without his consent of the investment he had contracted for, is questioned but not decided. (P. 446.)

**4. Limitation—Set in Motion by Wrong.**

It is not an obstacle to the plea of limitation that the party invoking it has put it in motion .by his own wrong. (P. 446.)

**5. Installment Debt—Default—Maturity of Whole—New Agreement.**

While a creditor can not by his acts alone change the effect of the debtor's partial default in maturing the entire debt under a contract so providing, the parties can by mutual agreement obviate this effect of the default and restore the contract to its original condition, the surrender by the debtor of his right to discharge the whole liability at once and his securing further credit furnishing consideration from each party for such agreement. (P. 447.)

**6. Same—Estoppel—Waiver.**

Where each party so acts as to justify the other in believing and acting on the belief that the effect of the failure to pay an installment when due is to be disregarded and the contract to stand as if there had been no default, the principle of estoppel by waiver would apply to their acts. (P. 447.)

**7. Limitation—New Promise—Writing.**

The statute requiring a new acknowledgment of the debt to be in writing in order to take the case out of the operation of limitation (Revised Statutes, article 3370) has application to the acknowledgment of the cause of action against which the statute runs, and does not prevent a parol agreement waiving the effect of partial default in payment of installments in maturing the entire debt. Such waiver restores the original debt, not mature, and against which no limitation runs. (P. 448.)

**8. Waiver—Question of Fact.**

See facts attending the payment and acceptance of installments of debt after default held to tend to show, as matter of fact, a mutual waiver of the effect of such default in maturing the entire debt, but not to warrant the inference of such waiver as matter of law. (Pp. 443, 444, 448.)

QUESTION CERTIFIED from the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

*Onion & Henry,* for appellant.—The time of payment may be extended by a parol agreement so that there will be no default within

the meaning of the deed (mortgage), because this is made with the concurrence of the creditor; although such an agreement be not binding for want of consideration * * * it is a sufficient excuse for the default. 2 Jones on Mort., secs. 1179-1191; Lowenstein v. Phelan, 22 N. W. Rep., 561; Jacobs v. Swift, 56 Pac. Rep., 1127; Watts v. Creighton, 52 N. W. Rep., 12; Sire v. Wrightman, 25 N. J. Eq., 102; West v. Crary, 47 N. Y., 423; 13 Am. and Eng. Enc. of Law, 719; 14 Fed. Rep., 763; 28 Fed. Rep., 343; 56 Fed. Rep., 690; Watson v. Fletcher, 49 Ill., 498; Goodall v. Boardman, 53 Vt., 92; Bell v. Romaine, 30 N. J. Eq., 25; Belloc v. Davis, 38 Cal., 242; Smalley v. Renken, 52 N. W. Rep., 507; Savings and Loan Society v. Culver, 59 Pac. Rep., 292.

An unconditional acceptance of the interest in default would be a waiver of the default. 2 Jones on Mort., 1186; Jacobs v. Swift, 56 Pac. Rep., 1127; Watts v. Creighton, 52 N. W. Rep., 12; Smalley v. Renken, 52 N. W. Rep., 507; Sire v. Wightman, 25 N. J. Eq., 102; Manufacturing Co. v. Robinson, 56 Fed. Rep., 690.

Article 3370, Revised Statutes (Batts' Annotated Civil Statutes), requiring the acknowledgment of a barred debt to be in writing to remove it from the bar of the statute, relates and applies only in cases where a debt is barred by the statute on its face, and has no reference or application to a case of waiver or forfeiture of credit. Rev. Stats., art. 3370.

*Denman, Franklin & McGown,* for appellee.—Under the contract between the parties, when Stewart failed to pay the three notes maturing on the first day of January, February, and March, respectively, 1894, the balance of the series of notes held by the loan company became "due and payable." The company's cause of action then accrued, the four years statute of limitation then began to run, and the claim became barred within four years thereafter and prior to the filing of this suit. Rev. Stats., art. 3356, sec. 1; Machine Works v. Reigor, 64 Texas, 91; Morrill v. Hoyt, 83 Texas, 60; Emerson v. Mills, 83 Texas, 385; Howard v. Windom, 86 Texas, 567; Fant v. Wickes, 32 S. W. Rep., 126; Rogers v. Watson, 81 Texas, 404.

The debt having become due by the failure to pay three of the notes in 1894, and appearing to be due on its face when the suit was instituted, the statute of limitation could be defeated only by an "acknowledgment in writing signed by the party to be charged thereby, executed after the notes appeared to become due." Rev. Stats., art. 3370; Meusebach v. Halff Brothers, 77 Texas, 188; Nunn v. Edmiston, 29 S. W. Rep., 1115; Lewis v. Black, 16 Texas, 652; Gathright v. Wheat, 70 Texas, 740; Krueger v. Krueger, 76 Texas, 178; Cohen v. Shwarts, 32 S. W. Rep., 820; Tilliard v. Hall, 32 S. W. Rep., 863; Trainer v. Seymour, 32 S. W. Rep., 154.

If an agreement not to sue for an indefinite period of time upon the past due notes can be inferred from the conduct of the parties, the agreement was in parol and without consideration and therefore did

not bind the company. It could have sued at any time upon the notes regardless of this agreement, and hence the running of the statute was not stopped. Austin, etc., Abstract Co. v. Bahn, 87 Texas, 582; Benson v. Phipps, 87 Texas, 578; Gibson v. Irby, 17 Texas, 173; Lane v. Scott, 57 Texas, 373; Norris v. Graham, 42 S. W. Rep., 576; Bonnell v. Prince, 32 S. W. Rep., 855; Beasley v. Boothe, 22 S. W. Rep., 255; Merchant v. Bowyer, 22 S. W. Rep., 763.

In a motion for rehearing, which was overruled, counsel for appellee urged: The court erred in holding that article 3370 does not control this case, for, notwithstanding an agreement to forbear or to waive the right to sue upon default may be made orally, and thus bind the creditor not to sue for the period covered by said agreement, if the new agreement is made after the cause of action has actually accrued and the statute has been put in operation against the original demand the creditor can not wait to sue thereon until the bar is complete and then upon the issue of limitations answer the statute by pleading any such oral agreement. Stoker v. Patton, 35 S. W. Rep., 65; Lewis v. Black, 16 Texas, 652; Martin v. Land Mortgage Bank, 23 S. W. Rep., 1038; Kearby v. Hopkins, 36 S. W. Rep., 515; Shapley v. Abbott, 42 N. Y., 448; Hayden v. Chase, 29 Me., 51; Crawford v. Lockwood, 9 How. Prac., 550; Andrae v. Redfield, 12 Blatch., 407; Burton v. Stephens, 58 Am. Dec., 153 (24 Vt., 131); Newton v. Carson, 80 Ky., 309; Bang v. Windmill Co., 96 Tenn., 361; Henry v. Thompson, Minor (Ala.), 232; Graeme v. Adams, 23 Gratt., 232; Steele v. Jennings, 1 McMullan (S. C.), 297.

After the default had occurred which matured all of appellant's notes, that clause in the contract maturing the whole debt upon the happening of the default had served its purposes; it had then no future function; the contract in legal effect then read, "On demand after March 1, 1894, we promise to pay," etc. Any agreement affecting the contract as it then existed, due and collectible, was necessarily either one of forbearance or extension. Kisler v. Sanders, 40 Ind., 78; Shapley v. Abbott, 42 N. Y., 443; Hodgdon v. Chase, 29 Me., 47; Crane v. French, 38 Miss., 503; DeFreest v. Warner, 30 Hun, 94; Randon v. Toby, 11 How. (U. S.), 493; Mann v. Couper, 2 App. D. C., 226; Insurance Co. v. Bloodgood, 4 Wend., 652; Gaylord v. Van Loan, 15 Wend., 308.

WILLIAMS, ASSOCIATE JUSTICE.—The statement and question below are certified for decision by the Court of Civil Appeals for the Fourth District:

"On August 19, 1892, Solon Stewart and his wife Georgia C. Stewart, desiring to build a home in the city of San Antonio, entered into a contract with the San Antonio Real Estate, Building and Loan Association to obtain the sum of $2376 with which to erect a home, and at the same time executed and delivered to said association seventy-two promis-

sory notes payable in monthly installments, including interest from date up to September 1, 1898, and at the same time made, executed and delivered to said association a builder's and mechanic's lien in writing properly acknowledged so as to bind the homestead, and in that lien which is referred to in each of the notes, it was provided 'that whenever any three of said notes or monthly payments remain unpaid, in whole or in part after due, then and thereupon the balance of said notes remaining shall be due and payable, and said association may at any time thereafter proceed to foreclose said debt and lien.' The money was used to erect a home for Stewart and wife. Stewart defaulted in payment of the notes that became due in January, February, and March, 1894, and paid nothing on any of the notes due in 1894 until October of that year, when he paid the January note, and in December paid the February note and afterwards the March note of 1894. On the first days of April, May, June, July, August, September, October, November, and December, 1894, and January, February, and March, 1895, and at various times for many months thereafter, the representative of the association saw Stewart and urged him to pay the notes that were past due and each time Stewart begged for further time, verbally promising to pay the notes. Further time was granted by the association and Stewart paid off at different times twenty-nine of the seventy-two notes, among the number being the three notes due respectively in January, February, and March, 1894. Both parties acted in connection with the notes as though no default had taken place by reason of failure to pay the installments due for the first three months of 1894. Payment was never refused by Stewart until just before the suit was instituted. On March 1, 1900, more than four years after default had been made in the payment of the three notes due in January, February, and March, 1894, but at a time when none of the remaining unpaid notes were barred by limitation on their faces, this suit was instituted and Stewart interposed a plea of four years limitations on the ground that all the notes became due in March, 1894, which plea was sustained by the court.

"Question: Did all the unpaid notes become due upon default in the payment of the three notes in such manner that the statute of limitations has barred appellant, regardless of what took place, as hereinbefore stated, between Stewart and the association in reference to the contract?"

The notes and the instrument creating the lien, executed at the same time concerning the same subject matter, are to be construed together as constituting one contract. According to the great weight of authority, including decisions of this court, the stipulation in the last mentioned writing has the effect of fixing a contingency upon the happening of which the debt should mature at a time earlier than the dates given in the notes for their maturity. Dodge v. Signor, 44 S. W. Rep., 926; Bank v. Peck, 8 Kan., 660; Manufacturing Co. v. Howard, 28 Fed. Rep., 741; Brownlee v. Arnold, 60 Mo., 79; 1 Dan. on Neg. Inst., sec.

156; Gregory v. Marks, 8 Biss., 44; Noell v. Gaines, 68 Mo., 649. There is some authority for the construction that such a stipulation in the mortgage alone does not have the effect, upon default in the payment of an installment, of maturing the notes for general purposes, but operates only to allow foreclosure of the mortgage and the application of the proceeds of the property to the whole debt without otherwise affecting the terms of credit expressed in the notes. Owings v. Mackenzie, 33 S. W. Rep., 802; dissenting opinion of Hough, J., in Noell v. Gaines (supra), and cases cited. This view can not be adopted consistently with the previous decisions of this court or the current of decisions elsewhere, of which many others could be cited besides those before referred to; and the effect of the stipulation in question in the instrument giving the lien must be held to be the same as if it had been inserted in the notes. Among the courts so treating it, another difference of opinion has arisen as to its effect, some treating it as maturing the notes absolutely, upon default in payment of one of the installments, and others holding that it merely gives to the creditor a right of election to declare the whole debt to be due or to waive the default and insist upon the performance of the contract as it originally stood unaffected by such default.

The view first stated has been adopted by this court, with the result that upon default in an installment the debt matures and limitation begins to run. Machine Works v. Reigor, 64 Texas, 91; Dodge v. Signor, supra. Other authorities to the same effect are Hemp v. Garland, 45 E. C. L., 519; Moore v. Sargent, 112 Ind., 484; Bank v. Peck, supra. It was insisted at the argument that these decisions were not well considered, and that the proposition that such provisions merely give to the creditor the option of declaring the debt due upon default in an installment is supported by the weight of authority and by the better reason. We have given the question a careful re-examination and, as a result, are unable to say either that it did not receive proper attention in the cases previously before this court or that the decisions are so clearly wrong or against the preponderance of authority as to justify us, if we were inclined to a different conclusion, to overrule them. They have, to say the least, the merit of giving to the unqualified provision that default shall mature the debt its exact meaning, while the opposite view qualifies it by an intention arrived at by construction that something else, viz., the option of the creditor, shall be essential to such maturity. Provisions in such contracts sometimes expressly give the option to the creditor and sometimes assume the form used in the present case. The authorities relied on by appellant give precisely the same effect to these differing provisions, which is, at least, a questionable liberty taken with the language in which the parties have expressed their intention.

Most of the authorities advancing this doctrine regard the provision as being in the nature of a penalty or forfeiture of which the party to whom it may accrue, is not bound to take advantage. Belloc v.

Davis, 38 Cal., 242; Fletcher v. Daugherty, 13 Neb., 224; Lowenstein v. Phelan, 22 N. W. Rep. (Neb.), 561; Watts v. Creighton, 52 N. W. Rep. (Iowa), 12; Leavitt v. Reynolds, 79 Iowa, 348; Nebraska City Bank v. Nebraska, etc., Co., 14 Fed. Rep. (Neb.), 764; Smalley v. Renken, 52 N. W. Rep. (Iowa), 507; Savings, etc., Co. v. Culver, 59 Pac. Rep. (Cal.), 292; Bell v. Romaine, 30 N. J. Eq., 23; Sire v. Wightman, 25 N. J. Eq., 102. If this proposition is essential to the conclusion stated, those decisions are not to be sustained upon principle and are opposed to the overwhelming weight of authority, by which such provisions are held to be neither penalties nor forfeitures, but simply as providing contingencies upon the happening of which the debt is to mature earlier than it otherwise would. 1 Pom. Eq. Jur., 439, and cases cited; Bonafous v. Rybot, 3 Burr., 1370.

But a reason more difficult to meet is found in the stipulations in the contract itself. The debtor promises to make his payments in installments at stipulated times and thereby gives to the creditor the benefit of an interest-bearing investment for the period agreed upon; and it may be said that this shows the intention of the parties that he should not have the right to violate this promise by breaking another— to pay each installment at maturity—and thereby secure the right to pay all before the times agreed upon; in other words, that the intention is apparent that he should not have the right to mature the debt, because he has promised to do the things which would prevent it from maturing, and that hence it was contemplated that only the creditor should have such right.

The question now before us is one of limitation, and we need not determine whether or not, under the view taken in this State, the debtor, by his willful default, could secure a right to pay the whole debt before he had agreed to pay it without the creditor's consent. The fact that the party invoking limitation may have put it in motion by his wrong is no obstacle to but is usually the occasion of its operation. Besides, it is not necessary to assume that the parties to such a contract intended to provide for none but wrongful refusals to pay installments. It might happen that the debtor upon good grounds would afterwards deny his liability upon the contract and therefore refuse to pay installments, in which case the provision would serve him a useful purpose in bringing the question at issue to a prompt test and not leave it entirely with the creditor to delay until perhaps evidence of the defense had been lost. The question at last is one of construction of the language used, and that which makes it mean just what it says is not without reason or good authority to support it. Where the purpose is only to give the option to the creditor, language expressive of it may be easily inserted.

It follows that when, upon default in the payment of the first installment, the whole debt matured according to the terms of the contract, the cause of action upon it accrued and limitation began and

continued to run, unless the transactions between the parties changed their rights as they existed after the default was made.

Authorities holding that by acceptance of payment of overdue installments, or extension of time upon an installment and other like acts, the creditor waives the default, are relied upon, but those are decisions in which the contract is regarded as only giving to the creditor the right of election.  When the proposition is established that the failure to pay an installment ipso facto gives rise to the cause of action upon the whole debt, it necessarily follows that mere delay in suing, or acceptance of part of what is due, or other act of the creditor alone will not take away his right to sue.  And if that right continues, limitation runs against it.

It is not in the power of the creditor by his acts alone to change the rights of the parties resulting from the maturity of the debt.  But both parties, by their joint action, may so alter such rights that the creditor would no longer have the right to demand nor the debtor to pay the entire indebtedness.  If it be true that, in a contract like this, where the installments are payable at given dates and the debtor has not the right before default to pay at any other times, such debtor acquires the right, after default, to pay all of the debt at once (a question which we need not now decide), any agreement the parties might make which would have the effect of obviating the default and restoring the contract to its original condition as if it had not been broken, would be supported by a sufficient consideration.  The debtor would secure from the creditor further credit and give up his right to discharge the whole liability at once.  Benson v. Phipps, 87 Texas, 578; Austin, etc., Abstract Co. v. Bahn, 87 Texas, 582.  But aside from this, while neither party by his separate action or nonaction could impair the rights of the other, each could waive his own rights as they accrued from the default in payment of an installment so as to estop him from relying upon such default.  To accomplish this, it would only be necessary that each should so act as to justify the other in believing and acting upon the belief that the effect of the failure to pay an installment was to be disregarded and that the contract should stand as if there had been no default.  The principle of estoppel by waiver would, we think, have proper application in such a case.  Bish. on Con., secs. 789-808; Big. on Estop., p. 633, et seq.; Insurance Co. v. Lacroix, 45 Texas, 158; Insurance Co. v. MacGregor, 63 Texas, 404.  An agreement or waiver having the effect supposed may be inferred from the conduct and declarations of the parties as well as evidenced by their express stipulations.

Counsel for appellee rely upon the doctrines and distinctions illustrated by the decisions in the cases of Abstract Company v. Bahn, 87 Texas, 582, and Benson v. Phipps, Id., 578, and contend that an agreement or waiver, such as that we have instanced, would not be good because it did not bind the creditor to forbear and the debtor not to pay for any given time.  The distinction is in this:  The contract

was in writing, fixing times and terms of credit, which were affected only by the default causing maturity earlier than such dates. It was therefore only necessary to take away the effect of the default and to restore the contract as it was before that occurred, when its terms would be perfectly definite and certain.

The statute which provides that "No acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law (of limitation) unless such acknowledgment be in writing and signed by the party to be charged thereby," does not control the question before us. The acknowledgment referred to in the statute is one which is to take the case out of the statute of limitation, and is therefore one made of a cause of action against which the statute runs. Where there is no cause of action, no right to sue, no limitation can run, and no acknowledgment is needed to take it out of the operation of the law. The effect of such an agreement or waiver as we have supposed is to take away the right to sue, and until the debt should mature under it, there would be no cause of action.

The language, "Acknowledgment of the justness of the claim," had a well defined meaning in the law of limitations before such statutes as this were passed, and the provision was intended to require them to be in writing where before they could have been oral, and not to restrict the power of parties to contract generally. The purpose was only to require those things which had become known as acknowledgments of claims to be in writing.

That there was such an agreement or waiver as we have supposed is not definitely stated in the certificate, but evidence is recited which tends to show it. Whether or not it existed is to be drawn as an inference of fact from all of the evidence, and this inference can not be drawn by this court as a matter of law. We therefore can only answer that while all of the notes became due upon default in payment of the first, we can not say as matter of law that the notes were barred when suit was brought. Whether they were or not depends upon facts to be found from the evidence.