**Opinion issued December 30, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00945-CV

————————————

## LEE A. HARDY AND POLLY HARDY, Appellants

## V.

## WELLS FARGO BANK, N.A., Appellee

On Appeal from the 157th District Court
Harris County, Texas
Trial Court Case No. 2011-07737

## MEMORANDUM OPINION

Lee A. and Polly Hardy appeal the take-nothing summary judgment on their

wrongful foreclosure claim against Wells Fargo Bank, N.A. In five issues, the

Hardys contend that the trial court erred in granting summary judgment in Wells

Fargo's favor on their wrongful foreclosure claim because (1) Wells Fargo's 2010 foreclosure action was barred by the statute of limitations; (2) there is no evidence that the substitute trustee who conducted the foreclosure was properly appointed; (3) one lender was the owner or holder of the promissory note and the deed of trust had been assigned to another lender; (4) there is no evidence that the Hardys were provided with the required notice of default prior to the foreclosure sale; and (5) Wells Fargo misapplied the Hardys' payments on the promissory note.

We reverse and remand for further proceedings.

## Background

In July 1978, the Whitneys purchased a home in Humble, Texas, and executed a promissory note and a deed of trust in favor of Valley Mortgage Company, Inc. The Note's original principal sum was $45,800 and the last payment was due August 1, 2008—the Note's maturity date.

The Hardys bought the home from the Whitneys in July 1986, and assumed the balance owed on the Note which, along with the Deed of Trust, was subsequently assigned to Washington Mutual Bank (WaMu) and, later, to Wells Fargo.[1] The Note includes an optional acceleration clause: "If any deficiency in the

---

[1] Wells Fargo contends that U.S. Bank National Association was the owner and holder of the Note and that Wells Fargo serviced the mortgage for U.S. Bank. The only evidence of this is an affidavit submitted by Wells Fargo during summary judgment proceedings. This statement, however, appears to conflict with the March 2, 2010 Substitute Trustees Deed conveying the Property from Wells

payment of any installment under this note is not made good prior to the due date of the next such installment, at the option of the holder, this note shall become immediately due and payable without notice and the lien given to secure its payment may be foreclosed." The Deed of Trust has a similar provision.

As reflected by the summary judgment evidence, the Hardys began to fall behind on their mortgage payments in 2004 and defaulted under the terms of the Note and Deed of Trust.[2] A July 12, 2005 notice of substitute trustee's sale and internal WaMu records indicate that WaMu, the then-current mortgagee and mortgage servicer, attempted to exercise its option to accelerate the Note on July 11, 2005, and the Property was scheduled to be sold at auction on August 2, 2005. The sale, however, did not proceed as scheduled. Instead, payments on past due installments were periodically made between August 16, 2005 and July/September 2006[3] (and accepted by WaMu).

Wells Fargo was assigned the Note and Deed of Trust in December 2006, and entered into a Stipulated Partial Reinstatement/Repayment Agreement (PRRA) with the Hardys on April 2, 2007 (2007 PRRA), the terms of which included the

---

Fargo—which is identified as both the current mortgagee and mortgage servicer—to David Brown.

[2] According to mortgage records provided by the Hardys, the September 2004 payment was made in June 2005.

[3] There is a gap in the mortgage records from September 26, 2006 through March 9, 2007.

3

Hardys' acknowledgement that they were one year behind on their mortgage and their agreement to pay the balance due (April 2006 through August 2008), plus interest, late charges, property preservation fees, and estimated attorney's fees and costs, in fifteen installments beginning on May 2, 2007. The 2007 PRRA further recites:

> The receipt of such payments referred to in paragraph two (2) of this agreement does not construe a waiver of our rights or remedies contained in the Note and/or Mortgage; and acceptance of any payments made by you will not be deemed to affect the acceleration of the Note and/or Mortgage in the event of default under the terms of this agreement and the remainder of the accelerated loan balance shall remain due and owing.

> We will hold legal action only upon receipt of agreed funds, signed agreement, and proof of income. Fees and costs will be paid first, with the remainder toward accrued payments.

The summary judgment evidence reflects that the Hardys only made the first three payments pursuant to the 2007 PRRA (May, June and July 2007).

On May 2, 2008, another Stipulated Partial Reinstatement/Repayment Agreement (2008 PRRA) was executed in which the Hardys acknowledged they were sixteen months behind on their payments and agreed to pay the balance (February 2007 through August 2008), plus interest, late charges, property preservation fees, and estimated attorney's fees and costs, in four installments beginning on May 12, 2008. Like the 2007 PRRA, the 2008 PRRA states that "acceptance of any payments made by [the Hardys] will not be deemed to affect

the acceleration of the Note and/or Mortgage in the event of default under the terms of this agreement and the remainder of the accelerated loan balance shall remain due and owing." The record reflects the Hardys' first three payments required under the 2008 PRRA, but not the final payment of $14,250.18 due on August 1, 2008—the Note's original maturity date.

On January 22, 2010, Wells Fargo issued a default notice advising that payment of the past due balance had not been received, the Note was in default, the Hardys had the right to pay the past due balance, and Wells Fargo was initiating foreclosure proceedings. Attached to this notice of default was a copy of the Notice of Substitute Trustee Sale, executed on February 1, 2010, that recited the foreclosure sale's auction date as March 2, 2010. The Hardys acknowledged their awareness of the March 2, 2010 sale date, and inability to raise funds sufficient to satisfy the total secured debt.

At the foreclosure sale, the Property was sold to David Brown and a Substitute Trustee's Deed was executed reflecting the sale. Brown subsequently conveyed the Property to RESCONN Investments, LLC, which evicted the Hardys in May 2011.

The Hardys sued Wells Fargo, Brown, and RESCONN. In their Third Amended Complaint, the Hardys claims against Wells Fargo alleged (1) wrongful foreclosure; (2) fraud; (3) violations of the Deceptive Trade Practices Act; (4)

5

breach of contract; (5) breach of an implied covenant of good faith and fair dealing; and (6) mental anguish. Wells Fargo's traditional summary judgment motion was granted and the court ordered that the Hardys take nothing on their claims against Wells Fargo.[4] The Hardys, who appeal only the grant of summary judgment with respect to their wrongful foreclosure claim, do not contest the take-nothing judgment rendered on their fraud, DTPA, breach of contract, breach of implied covenant of good faith and fair dealing, and mental anguish claims.

## Statute of Limitations

The Hardys maintain that the summary judgment on their wrongful foreclosure claim was error because any foreclosure action was barred by the statute of limitations.

## A. Standard of Review

Our review of a trial court's summary judgment is de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail, the summary judgment movant must show that no genuine issue of material fact exists and that the trial court should grant a judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). We examine the entire record and do so in the light most favorable to the nonmovant, taking as true all evidence favoring the nonmovant if

---

[4] Brown and RESCONN also filed separate motions for summary judgment, which the trial court granted. Neither Brown nor RESCONN are parties to this appeal.

reasonable jurors could, and indulging every reasonable inference and resolving any doubts against the motion. *See City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005); *Dorsett*, 164 S.W.3d at 661.

**B.    Applicable Law**

Proof of a wrongful foreclosure claim demands demonstration of a defect in the foreclosure sale proceedings and a causal connection between the defect and a grossly inadequate selling price. *See Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.) (citing *Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied)). A defect in foreclosure proceedings may occur when there is no default or when the sale is otherwise void. *See Slaughter v. Qualls*, 162 S.W.2d 671, 675 (Tex. 1942) (deciding that foreclosure sale was void because, inter alia, note was not in default at time of sale); *Lavigne v. Holder*, 186 S.W.3d 625, 627–28 (Tex. App.—Fort Worth 2006, no pet.) (reversing summary judgment in favor of creditor because, in absence of default, creditor could not accelerate debt or foreclose against property). A defect may also occur when the statutory foreclosure procedures are not followed. *See Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 768 (Tex. 1983).

"A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day

the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(b) (West 2002). "If a series of notes or obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment." *Id.* § 16.035(e). "When this four-year period expires, the real-property lien and the power of sale to enforce the lien become void." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001). However, if the note or deed of trust contains an optional acceleration clause, the cause of action accrues (and the statute of limitations begins to run) when the holder "actually exercises" its option to accelerate. *Id.* at 566; *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The note holder, however, may only "accelerate" the maturity date of the note if its last installment is not yet due. *See CA Partners v. Spears*, 274 S.W.3d 51, 65 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Accordingly, once the maturity date of the last installment has passed, the holder's cause of action accrues—and limitations begin to run—on the maturity date of the final installment. *Id.*

A noteholder who effectively exercises its option to accelerate may nevertheless "abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity." *Khan*, 371 S.W.3d at 353 (quoting *Holy Cross*, 44 S.W.3d at 566). Acceleration can be

8

abandoned by agreement or other action of the parties. *Holy Cross*, 44 S.W.3d at 567 (citing *San Antonio Real–Estate, Bldg. & Loan Ass'n v. Stewart*, 94 Tex. 441, 61 S.W. 386, 388 (1901)); *Khan*, 371 S.W.3d at 353. Abandonment of acceleration has the effect of restoring the contract to its original condition, including restoring the note's original maturity date. *See Holy Cross*, 44 S.W.3d at 567; *Khan*, 371 S.W.3d at 353.

## C. Was the Note Accelerated Before the August 1, 2008 Maturity Date?

The Note includes an optional acceleration clause, which means that the cause of action accrues (and limitations commences) when the holder "actually exercises" its option to accelerate. *Holy Cross*, 44 S.W.3d at 566. If there is no acceleration (or the acceleration is abandoned), the holder's cause of action for foreclosure accrues—and limitations commences—on the maturity date of the final installment. *Spears*, 274 S.W.3d at 65.

The Hardys maintain, and the summary judgment evidence supports, that WaMu, Wells Fargo's predecessor in interest, mortgagee, and mortgage servicer at the time, exercised its option to accelerate the Note in July 2005. Wells Fargo does not dispute this.

## D. Does Passage of the Note's Maturity Date Void any Prior Acceleration of Note for Purposes of Statute of Limitations?

Citing to *Spears*, Wells Fargo contends that because the Note matured on August 1, 2008, any prior acceleration was void and, the statute of limitations

9

having commenced on the date of maturity, the foreclosure fell within the limitations period and the grant of summary judgment on this basis was not error. 274 S.W.3d at 65. *Spears*, however, does not support the proposition that passage of the maturity date voids any prior acceleration of a note. Rather, *Spears* states that if a note contains an optional acceleration clause, the action accrues when the holder actually exercises its option to accelerate. *Id.* (citing *Holy Cross*, 44 S.W.3d at 566). If, however, the maturity date of the last installment has passed, the holder may no longer "accelerate" the note, and the holder's cause of action accrues—and limitations begins to run—on the maturity date of the final installment. *Spears*, 274 S.W.3d at 65.

## E.    Was Acceleration Abandoned?

Wells Fargo argues that it proved as a matter of law that it abandoned the acceleration by acceptance of the Hardys' mortgage payments pursuant to the 2007 PRRR and 2008 PRRR. According to Wells Fargo, acceptance of these payments reinstated the loan, and, therefore, Wells Fargo's option to foreclose on the Property did not expire until four years after the date the last payment was due on the Note: four years after the Note's August 2008 maturity date. Wells Fargo further contends that the 2007 PRRA and the 2008 PRRA expressly state "that Wells Fargo did not waive any of its rights in conjunction with acceleration,

reinstatement, or continuing with foreclosure if [the Hardys] could not cure the default" and, therefore, it was entitled to foreclose on the Property in 2010.

The Hardys respond that (1) the 2007 PRRA and the 2008 PRRA are ineffective to abandon acceleration and reinstate the loan to its original terms, (2) both agreements merely indicate Wells Fargo's agreement to forbear from exercising its right to foreclosure at that time, and (3) both agreements expressly state that acceptance of payments does not affect the acceleration of the Note in the event of default, and thus, the acceptance of partial payments made pursuant to these agreements cannot abandon acceleration.

Citing to 15 W. Mike Baggett, *Texas Practice Series, Texas Foreclosure: Law and Practice*, § 1.20 (2001), the Hardys argue that abandonment requires a written agreement between the parties that unambiguously states that the acceleration of the note is canceled and the Note is reinstated to be paid in installments pursuant to the original terms. The Hardys contend that neither the 2007 PRRA nor the 2008 PRRA meet this standard, and therefore, both agreements are ineffective to abandon acceleration and reinstate the loan to its original terms. Texas law, however, is clear that acceleration may be abandoned by the conduct of the parties alone—no written agreement is required. *See Holy Cross*, 44 S.W.3d at 567 (citing *San Antonio Real–Estate*, 61 S.W. at 388); *see*

*also Khan*, 371 S.W.3d at 355–56 (rejecting argument that abandonment of acceleration and reinstatement of original terms requires written agreement).

Citing to *Marques v. Wells Fargo Home Mortgages, Inc.*, 2011 WL 2005837, *3–4 (E.D. Cal. 2011) the Hardys also contend that instead of abandoning acceleration and reinstating the Note, the 2007 PRRA and the 2008 PRRA merely indicates Wells Fargo's agreement to forbear from exercising its rights to foreclose on the accelerated Note at that time and that forbearance is not the same as reinstatement. *Marques*, however, treated the question of whether the agreement *modified* the terms of the Note and did not speak to the issue of whether the note holder abandoned acceleration.

The Hardys also argue, contrary to Wells Fargo's position, that their remittance of partial payments pursuant to the 2007 PRRA and 2008 PRRA (and Wells Fargo's acceptance of such payments) is not conclusive evidence that acceleration had been abandoned and the Note reinstated, citing to *Thompson v. Chrysler First Business Credit Corporation*, 840 S.W.2d 25, 30 (Tex. App.— Dallas 1992, no writ). *Thompson*, however, does not support this general proposition. On the contrary, *Thompson* stands for the proposition that when a federal bankruptcy court issues an order of adequate protection pursuant to which the parties enter into a repayment agreement, and the lender accepts payments made pursuant thereto, such payments do not establish that the lender abandoned

the acceleration of the Note for purposes of summary judgment. *Thompson*, 840 S.W.2d at 30–31G; *see also Khan*, 371 S.W.3d at 354 (discussing *Thompson*). Here, there is no "adequate protection" agreement and the 2007 and 2008 PRRAs are not comparable to such an agreement. Accordingly, *Thompson* is distinguishable.

Although the Hardys' reliance upon *Thompson* and other legal authorities is misplaced, they, nevertheless, correctly note that both PRRAs expressly provide that, in the event of default on the agreement, the acceptance of payments does not affect the acceleration of the Note:

> The receipt of such payments referred to in paragraph two (2) of this agreement does not construe a waiver of our rights or remedies contained in the Note and/or Mortgage; and acceptance of any payments made by you will not be deemed to affect the acceleration of the Note and/or Mortgage in the event of default under the terms of this agreement and the remainder of the accelerated loan balance shall remain due and owing.

The evidence is clear that the Hardys made only the first three of fifteen installment payments required by the 2007 PRRA and the first three of four installment payments required by the 2008 PRRA. As such, the Hardys failed to comply with both agreements. Because the Hardys defaulted under both PRRAs, Wells Fargo's acceptance of payments under either agreement did not abandon acceleration. Thus, Wells Fargo did not meet its burden of proving that it was entitled to summary judgment as a matter of law. Accordingly, the trial court erred

13

in granting summary judgment in Wells Fargo's favor on the Hardys' wrongful foreclosure claim because a fact issue existed as to whether foreclosure was barred by the statute of limitations.

We sustain the Hardys' first issue. In light of our resolution of this issue, we need not address the remaining arguments raised on appeal.

### Conclusion

We reverse the trial court's judgment with respect to the Hardys' wrongful foreclosure claim against Wells Fargo and remand for further proceedings.


Jim Sharp
Justice


Panel consists of Justices Jennings, Sharp, and Brown.