Opinion issued July 25, 2019



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00866-CV

———————————

### JIMMIE DALE WHEELER, Appellant

### V.

### MTGLQ INVESTORS, L.P. AND NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, Appellees

---

**On Appeal from the 125th District**
**Harris County, Texas**
**Trial Court Case No. 2016-88326**

---

## MEMORANDUM OPINION

Appellant, Jimmie Dale Wheeler, appeals the trial court's order granting summary judgment in favor of appellees, MTGLQ Investors, L.P. and New Penn

Financial, LLC d/b/a Shellpoint Mortgage Servicing[1] and a take-nothing judgment on Wheeler's claims for breach of contract and declaratory and injunctive relief. Wheeler contends that the trial court erred because (1) the statute of limitations bars MTGLQ's enforcement of its lien; (2) MTGLQ cannot enforce its lien because Wheeler did not agree to allow MTGLQ such a right in the deed of trust; and (3) Texas Practice and Remedies Code section 16.038 is unconstitutional. We affirm.

## Background

Wheeler, a former investment adviser and real estate developer, obtained a secured loan to purchase property in 1993. After Wheeler repeatedly failed to repay the loan, JPMorgan Chase Bank, N.A., the loan servicer at the time, and Wheeler entered into two forbearance agreements—in August 2005 and November 2007—and two modification agreements—in October 2006 and December 2010—to allow Wheeler to cure his defaults. The 2010 modification agreement extended the loan's maturity date to November 1, 2050.

Under the 2010 modification agreement, Wheeler made five payments but did not make a payment in May 2011 or any payment thereafter. After Wheeler defaulted on the modified loan, Chase sent him written notice of his default on December 7, 2011, informing him that if he failed to cure his default Chase would

---

[1]     New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing is now known as NewRez, LLC.

accelerate his loan. Wheeler did not cure his default and Chase's foreclosure counsel, Barrett Daffin, sent Wheeler notices of acceleration dated May 2, 2011 and June 20, 2011. The acceleration notices also advised Wheeler that the substitute trustee would foreclose on the property on June 7 and August 2, 2011, respectively.

Chase did not foreclose on the property on June 7 or August 2, 2011. On January 19, 2012, Daffin sent notice to Wheeler that Chase rescinded "the notice of acceleration dated 6/20/11 and all prior notices of acceleration." After Wheeler did not bring his loan current following the deceleration, Daffin sent Wheeler a notice of acceleration, advising him that the substitute trustee would foreclose on the property on February 5, 2013. On February 4, 2013, Wheeler sued Chase and obtained a temporary restraining order to prevent foreclosure.

The trial court subsequently dismissed Wheeler's suit. Daffin sent Wheeler a notice of acceleration dated September 11, 2014, advising him that the substitute trustee would sell the property on October 7, 2014. On November 20, 2014, Daffin sent another notice of acceleration to Wheeler, advising him that the trustee would sell the property at a foreclosure sale on January 6, 2015. Wheeler again sued Chase and obtained a temporary restraining order to prevent foreclosure on January 5, 2015.

The trial court dismissed Wheeler's second suit. Two months later, and after Chase did not proceed with the foreclosure sale, Chase's counsel sent Wheeler notice

3

dated May 13, 2015, advising him that Chase "rescinds and abandons any acceleration of the Note or any other debt secured by the Deed of Trust made by [Chase] or by its servicer(s) prior to the date of execution of this document."

Chase subsequently transferred servicing of Wheeler's loan to Shellpoint, effective February 1, 2016. On May 9, 2016, Shellpoint, as the servicer for MTGLQ, sent a notice to Wheeler advising him that his loan was in default and that, if he failed to cure his default within forty-five days, Shellpoint would accelerate the loan. Wheeler did not cure his default. On November 23, 2016, Shellpoint accelerated the loan, advising Wheeler that the foreclosure sale would take place on January 3, 2017.

On December 28, 2016, Wheeler filed the instant suit "seek[ing] to stop the pending foreclosure of his homestead." He alleged that a pending foreclosure sale was "in breach of contract" and that the four-year statute of limitations prevented MTGLQ from "enforc[ing] the lien and power of sale in the Deed of Trust." Wheeler sought temporary injunctive relief "blocking all aspects of the foreclosure process during the pendency of [the] case" and a declaratory judgment that "the lien and power of sale in the Deed of Trust have expired" and "MTGLQ has no legal interest in the property." Wheeler also requested "his costs and reasonable and necessary attorney fees under Section 37.009" of the Civil Practice and Remedies Code. On December 29, 2016, the court entered another temporary restraining order preventing Shellpoint and MTGLQ from proceeding with foreclosure. The order

included the following handwritten notation: "This is Plaintiff's third suit to block foreclosure on this property." On January 27, 2017, Shellpoint and MTGLQ filed their answer.

On March 21, 2018, MTGLQ and Shellpoint moved for traditional summary judgment on the grounds that limitations did not bar enforcement of the lien on Wheeler's property or sale of the property and MTGLQ did not breach any contract. On March 23, 2018, Wheeler moved for summary judgment on the basis that "the lien against his homestead had expired as a matter of law." On April 9, 2018, MTGLQ and Shellpoint filed their response to Wheeler's summary judgment motion. On July 14, 2018, Wheeler filed his reply to MTGLQ and Shellpoint's summary judgment response and his response to their summary judgment motion.

On July 17, 2018, the trial court entered an order (1) granting MTGLQ and Shellpoint's motion for summary judgment; (2) denying Wheeler's motion for summary judgment; and (3) awarding MTGLQ and Shellpoint a take-nothing judgment on Wheeler's affirmative claims for relief against them.

On August 14, 2018, Wheeler moved for rehearing and a new trial. The trial court denied Wheeler's motions on September 13, 2018. This appeal followed.[2]

---

[2] Wheeler filed an emergency motion to set a bond for a stay pending appeal. The trial court granted the motion and ordered a bond set in the amount of $2,500.00 per month. MTGLQ and Shellpoint filed a motion for reconsideration of the trial court's order granting Wheeler's motion to set a bond. On April 2, 2019, this Court granted MTGLQ and Shellpoint's motion and vacated the trial court's order.

5

**Discussion**

In three issues, Wheeler argues that the trial court erred in granting summary judgment in favor of MTGLQ and a take-nothing judgment on his claims because (1) the statute of limitations bars MTGLQ's enforcement of its lien; (2) MTGLQ cannot enforce its lien because he did not agree to allow MTGLQ such a right in the deed of trust; and (3) Texas Practice and Remedies Code section 16.038 is unconstitutional and, even if it is constitutional, it does not apply in this case.

## A. Standard of Review

We review a trial court's grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When reviewing a summary judgment motion, we must (1) take as true all evidence favorable to the nonmovant and (2) indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any one of the grounds is meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant

judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Where, as here, both parties moved for summary judgment and the trial court granted one motion and denied the other, "we review all the summary judgment evidence, determine all of the issues presented, and render the judgment the trial court should have." *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

## B. Statute of Limitations

In his first issue, Wheeler contends that the statute of limitations bars MTGLQ's enforcement of its lien. Specifically, he argues that MTGLQ's right to enforce the lien accrued when MTGLQ accelerated the loan on May 2, 2011, and that the applicable four-year statute of limitations expired before MTGLQ sought to enforce the deed of trust.

### 1. Applicable Law

"A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.035(b). When, as

7

here, the lien secures an installment note, the four-year period begins to run on the note's maturity date of the last note, obligation, or installment. *Id.* § 16.035(e). "On the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void." *Id*. § 16.035(d).

If a note or deed of trust secured by real property contains an optional acceleration clause, the action accrues when the holder of the note actually exercises its option to accelerate. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *Khan v. GBAK Props., Inc*., 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Effective acceleration requires (1) notice of intent to accelerate and (2) notice of acceleration. *Holy Cross*, 44 S.W.3d at 566. Both notices must be "clear and unequivocal." *Id*. (quoting *Shumway v. Horizon Credit Corp*., 801 S.W.2d 890, 893 (Tex. 1991)).

After a lender accelerates a note, the acceleration can be abandoned by agreement or other action of the parties. *See Holy Cross*, 44 S.W.3d at 566–67 (stating noteholder who has accelerated note upon default can abandon acceleration if holder continues to accept payments without exacting any remedies available to it upon declared maturity); *Khan*, 371 S.W.3d at 353. Abandonment of acceleration restores the contract to its original condition, including restoring the note's original maturity date and resetting the statute of limitations. *Holy Cross*, 44 S.W.3d at 566–67; *Khan*, 371 S.W.3d at 353; *see also Bracken v. Wells Fargo Bank, N.A.*, No. 05-

8

16-01334-CV, 2018 WL 1026268, at *3 (Tex. App.—Dallas Feb. 23, 2018, pet. denied) (mem. op.) ("If acceleration is abandoned before the limitations period expires, the note's original maturity date is restored and the noteholder is no longer required to foreclose within four years from the date of acceleration.").

## 2. Analysis

Here, the deed of trust contains an optional acceleration clause. It is undisputed that Chase exercised its option to accelerate the note. On December 7, 2011, Chase sent Wheeler notice of his default and Chase's intent to accelerate the loan if he did not cure his default. After Wheeler did not cure his default, Chase sent Wheeler notices of acceleration on May 2, 2011 and June 20, 2011. It is also undisputed that, on January 19, 2012, Chase sent notice to Wheeler by certified mail that it "rescinds the notice of acceleration dated 6/20/2011 and all prior notices of accelerations." After Chase again exercised its option to accelerate in 2013 and 2014, Chase's counsel sent Wheeler notice dated May 13, 2015, advising him that Chase "rescinds and abandons any acceleration of the Note or any other debt secured by the Deed of Trust made by [Chase] or by its servicer(s) prior to the date of execution of this document." Wheeler did not cure his default and, on November 23, 2016, Shellpoint accelerated the loan.

Wheeler does not dispute that he received the acceleration rescissions. Rather, he argues that the rescissions were ineffective because *Holy Cross* makes clear that

9

abandonment of acceleration can only occur when a borrower makes payments after acceleration and the lender accepts the payments. Contrary to Wheeler's contention, *Holy Cross* does not stand for the proposition that abandonment of acceleration can only occur if a borrower makes payments after acceleration. Noting that the borrower had made no payments after acceleration, the Court in *Holy Cross* stated that neither the noteholder nor its successors "had otherwise expressed an intent to abandon acceleration." *Holy Cross*, 44 S.W.3d at 570. The Court cited other cases holding that acceleration had been waived in instances other than those involving post-acceleration payments. *See id.* at 566–67 (citing *San Antonio Real Estate, Bldg. & Loan Ass'n v. Stewart*, 61 S.W. 386, 388 (Tex. 1901) (explaining that parties' agreement or actions can "have the effect of obviating the default and restoring the contract to its original condition as if it had not been broken") and *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. App.—Tyler 1974, no writ) (finding that after city had exercised its option to accelerate maturity date upon final installment of assessment levied against landowner, city's subsequent taking of nonsuit on its counterclaim was unilateral revocation of exercise of acceleration option)).

Chase timely rescinded its 2011 acceleration and each subsequent acceleration, thereby restoring the note's maturity, and limitations would not run until four years after the note matured, *i.e.*, November 1, 2054. The trial court did

not err in granting summary judgment because the statute of limitations did not bar MTGLQ from enforcing its lien. We overrule Wheeler's first issue.

## C. Right to Rescind Acceleration

In his second issue, Wheeler argues that Chase could not rescind its own acceleration because "[t]here is absolutely no contractual right in the Deed of Trust for the original Lender, or any subsequent assignee of the original Lender, to invent the right to unilaterally rescind an acceleration[.]"

The Austin Court of Appeals rejected a similar argument in *Brannick v. Aurora Loan Services, LLC*, No. 03-17-00308-CV, 2018 WL 5729104, at *3 (Tex. App.—Austin Nov. 2, 2018, no pet.) (mem. op.). In that case, the borrowers argued that the mortgagee had no contractual right to waive acceleration because the note and security instrument did not authorize abandonment. *See id*. at *3. The court disagreed, concluding that "whether a party has waived a contractual right does not depend on whether the contract allows for it." *Id.* (citing *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 482 (Tex. 2017)). Other courts have also recognized a mortgagee's right to rescind acceleration without requiring that the contract expressly allow it. *See, e.g.*, *Emmert v. Wilmington Sav. Fund Soc'y, FSB*, No. 02-17-00119-CV, 2018 WL 1005002, at *2 (Tex. App.—Fort Worth Feb. 22, 2018, no pet.) (mem. op.) (recognizing note holder may waive or abandon acceleration by agreement or by action); *Khan*, 371 S.W.3d at 356 ("[I]f an agreement abandoning

11

acceleration had to be in writing, then the parties would not be able to do it by their actions alone . . . ."); *Santibanez v. Saxon Mortg. Inc.*, No. 11–10–00227–CV, 2012 WL 3639814, at *2 (Tex. App.—Eastland Aug. 23, 2012, no pet.) (mem. op.) ("The parties can abandon acceleration and restore the contract to its original terms by agreement *or* actions.") (emphasis in original); *Dallas Joint Stock Land Bank v. King*, 167 S.W.2d 245, 247 (Tex. App.—Fort Worth 1942, writ ref'd) ("[A]fter a note has been declared all due under a provision giving the holder the option to do so, [the holder may] waive or rescind such action so as to reinstate the note and make it payable again according to its original terms."). We therefore overrule Wheeler's second issue.

## D. Texas Civil Practice and Remedies Code Section 16.038

In his third issue, Wheeler contends that Texas Civil Practice and Remedies Code section 16.038 is unconstitutional. He argues that, even if it is constitutional, it is inapplicable in this case.

### 1. Applicable Law

The Texas Constitution provides that "[n]o bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." TEX. CONST. art. I, § 16. A retroactive law is "a law that acts on things which are past." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002). However, retroactive effect alone will not make a statute unconstitutional.

12

*See Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 139 n.67 (Tex. 2010) (citing *Tex. Water Rights Comm'n v. Wright*, 464 S.W.2d 642, 648 (Tex. 1971)). We presume that a statute is constitutional, *see Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003), and the burden of demonstrating that a statute is unconstitutional is on the party challenging it. *Id.*

In 2015, the Legislature enacted section 16.038 of the Texas Civil Practice and Remedies Code, entitled "Rescission or Waiver of Accelerated Maturity Date." The statute provides, in relevant part:

> If the maturity date of . . . a note . . . payable in installments is accelerated, and the accelerated maturity date is rescinded or waived in accordance with this section before the limitations period expires, the acceleration is deemed rescinded and waived and the note . . . shall be governed by Section 16.035 as if no acceleration had occurred.

TEX. CIV. PRAC. & REM. CODE § 16.038(a). Under the statute, rescission or waiver is effective if made by "a written notice of a rescission or a waiver" served by first class or certified mail. *Id.* § 16.038(b), (c). While the statute affirmatively states that it does not create an exclusive method for abandoning or waiving acceleration, *see id.* § 16.038(e), it does provide a specific mechanism by which a lender can unilaterally waive its earlier acceleration. *See Graham v. LNV Corp.*, No. 03-16-00235-CV, 2016 WL 6407306, at *4 (Tex. App.—Austin Oct. 26, 2016, pet. denied) (mem. op.). Section 16.038 "applies with respect to a maturity date accelerated before, on, or after the effective date of this Act [June 17, 2015] and any notice of

13

rescission or waiver of an accelerated maturity date served before, on, or after the effective date of this Act." *See* Act of May 26, 2015, 84th Leg., R.S., ch. 759, § 2, 2015 Tex. Gen. Laws 2309, 2310.

## 2. Analysis

Wheeler contends that section 16.038 is unconstitutional because it deprives him of his right to rely on the expiration of the applicable four-year statute of limitations in this case. He argues that the effect of an expired statute of limitations is precisely the kind of substantive right protected by section 16 of the Texas Constitution. However, as we concluded above, MTGLQ timely rescinded all accelerations before expiration of the limitations period—thus, Wheeler is not being deprived of the effect of an expired limitations period. Further, Texas courts recognized, long before section 16.038 was enacted, that a mortgagee can rescind its acceleration option. *See Denbina*, 516 S.W.2d at 463; *see also* TEX. CIV. PRAC. & REM. CODE § 16.038(e) ("This section does not create an exclusive method for waiver and rescission . . . .").

Moreover, Wheeler bore the burden of demonstrating that section 16.038 is unconstitutional. *See Walker*, 111 S.W.3d at 66. In determining whether a statute or ordinance violates the prohibition against retroactive laws, courts must consider three factors: (1) the nature and strength of the public interest served by the statute as evidenced by the legislature's findings; (2) the nature of the prior right impaired

14

by the statute; and (3) the extent of the impairment. *Robinson*, 335 S.W.3d at 145. Wheeler does not provide any analysis of these factors on appeal, nor did he do so in the summary judgment proceedings below.

Finally, Wheeler argues that, even if section 16.038 is constitutional, it is inapplicable in this case. This is so, he reasons, because MTGLQ invoked the statute four years after acceleration and section 16.038 only applies "before the limitations period expires." As discussed above, MTGLQ timely rescinded all accelerations before expiration of the limitations period. Section 16.038 applies in this case. Accordingly, we overrule Wheeler's third issue.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice

Panel consists of Justices Keyes, Lloyd, and Hightower.

15